David R. Ongaro (State Bar No. 154698)
dongaro@ongaropc.com
ONGARO PC
50 California Street, Suite 3325
San Francisco, CA  94111
Telephone:      (415) 433-3900
Facsimile:       (415) 433-3950

Attorneys for Plaintiff
LANCE BAIRD, individually, and on
behalf of a class of others similarly situated

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE BAIRD, individually, and on behalf of a class of others similarly situated, | **Case No.** |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | **JURY TRIAL REQUESTED** |
| SAMSUNG ELECTRONICS AMERICA, INC., a corporation; and DOES 1-100, | |
| Defendant. | |

Plaintiff Lance Baird ("Plaintiff"), individually and on behalf of all others similarly situated ("the Class"), alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

**NATURE OF ACTION**

1.      Between approximately 2010 and the present, Defendant Samsung Electronics America, Inc., ("Defendant") manufactured and sold new "smart televisions" (hereinafter "Smart TVs") to the consuming public in the United States.  At the time, Smart TVs had the new and unique capability to, among other things, access applications (hereinafter "apps") directly from the television.  Not since the advent of color television had consumers' television viewing experience changed so dramatically.  Manufacturers including Defendant took advantage of the dramatic change in television use – profits and revenues soared.

2.      Defendant sold Smart TVs to consumers by promoting them as inherently different from traditional television sets based on their ability to access entertainment apps.  Defendant promoted Smart TVs as having all the convenience of smart phones and computers with the ease and convenience of using a familiar device – the television set – in the comfort of consumers' living rooms.  To lure consumers in, Defendant promoted its most popular Smart TV entertainment apps, including Netflix, Hulu, and YouTube.  Specifically, Defendant promoted Smart TVs by placing the YouTube logo on its packaging, in-store displays, and by displaying the YouTube app in its commercials and in online advertising to inform consumers that Smart TVs came with YouTube access included upon purchase.  Defendant promoted its new Smart TVs with instructional videos on how to access streaming devices, including YouTube, and even pre-installed YouTube in its "Smart Hub" app platform.  Smart Hub is the platform on Defendant's Smart TVs that houses entertainment apps including YouTube.

3.      Defendant promoted, through advertising and marketing that educated and informed the consuming public, its Smart TVs as a means to access YouTube.  At no time between 2010 through at least 2013 did Defendant disclaim that continued use of the YouTube app, for the life of its Smart TVs, could or would end.

4.      The manner in which YouTube sends content to and communicates with

1   consumers' Smart TVs is commonly referred to its Application Programming Interface ("API").

2   Smart TVs manufactured in 2013 and before often ran on an older, flash-based API system.

3   Beginning in 2013 Smart TV manufacturers including Defendant began switching to newer

4   HTML5-based API systems.  Smart TVs that run on the newer HTML5 systems still provide

5   access to YouTube.  Flash-based Smart TVs, including those manufactured by Defendant in 2013

6   and before no longer have access to the YouTube app.  The flash-based Smart TVs manufactured

7   by Defendant that no longer provide access to YouTube are hereinafter referred to as "Affected

8   Smart TVs."

9          5.      On or about June 26, 2017, YouTube permanently stopped functioning as an app on

10   Defendant's Affected Smart TVs.  Defendant has offered no remedy to Plaintiff or the millions of

11   similarly situated consumers that have since lost access to YouTube on Defendant's Affected

12   Smart TVs.  Defendant's advice to consumer complainants related to loss of YouTube

13   functionality is to either (a) buy a new Smart TV, or (b) buy a separate, exterior streaming device

14   such as a Google Chromecast, which would then allow consumers to access YouTube content on

15   their Affected Smart TVs.  In other words, Defendant is using the loss of YouTube functionality

16   on its Affected Smart TVs to continue to profit off of consumers who, like Plaintiff, have suffered

17   harm.

18          6.      YouTube explained the sudden loss of access to its app on Affected Smart TVs in

19   the following notice:

20
21          The YouTube Flash app on older TV device models will no longer be available
            starting June 26th 2017. If your TV model is from 2012 or earlier, you likely have
22          this older version of the YouTube app which looks like this.

23          In 2012, YouTube and our device partners started distributing an HTML5 version
            of the YouTube app for TVs. This app has many new features and other
24          improvements that are not available on the older Flash app. We now think it is the
            right time to end-of-life this app because as we continue to roll out new features to
25          the current YouTube on TV app (topic tabs, improved search, watch next,
            recommendations, better transport controls, etc.) the legacy devices using the Flash
26          app cannot get them.

27          **1.      How to continue watching YouTube**

28          If your device is impacted by this launch, you can still continue watching
            YouTube using the following methods:

**a.      Continue using your existing TV**

You can attach a streaming stick / box to your TV's HDMI input to continue watching YouTube on TV using your existing TV screen. Low cost options for this include: Chromecast and Android TV.

**b.      Upgrade to a newer Smart TV or Game Console**

Most Smart TVs from 2013 and onward have the latest version of the YouTube app for TV.

YouTube is also available to be installed on PlayStation 3 & 4, Xbox 360 and Xbox One, and Wii U.

7.      New Smart TVs can easily exceed $1,000 in price, while exterior streaming devices range in price from $50 to upwards of $100 per unit.

8.      Since June 26, 2017, hundreds of Affected Smart TV owners have complained in Defendant's online community forums about the loss of YouTube functionality on their Affected Smart TVs.  Defendant uses "moderators" in its online community forums to respond to consumers' complaints.  The "solutions" offered by "moderators" in online forums mirror the "solutions" offered by Defendant and set forth by YouTube in the above notice to consumers.  The following is an example of the frustrations voiced by owners of Defendant-manufactured Affected Smart TVs who have lost access to YouTube on their Affected Smart TVs:

- Usere2dQR2bdKk:  Please help, it has only been a week and YouTube was not working on my Samsung Smart tv model UN46ES7500 and I deleted the app. After which I am unable to find it in Samsung AppStore or videos to download it!!! My son is 2 yrs old and I need the app to show him nursery rhymes…please help.

    o SAMSUNG MODERATOR:  YouTube is transitioning from their legacy, Flash based service to a newer, more modern service. YouTube will still be available on newer TVs that support HTML5. This is a decision by YouTube to remove all the legacy Flash based apps. This is not just a Samsung thing but it is all streaming devices from all manufacturers.  Sadly Samsung cannot bring it back, you would need to bring this up with YouTube.

    o SAMSUNG MODERATOR:  Features and specifications are subject to

3
CLASS ACTION COMPLAINT

1    change without prior notification.[1]

2                                **PARTIES**

3    9.      Plaintiff is an individual resident of Los Angeles County, California.

4    10.     Defendant is a corporation that is qualified to conduct business in the State of

5    California.  Defendant sells Smart TVs throughout California and advertises and markets them

6    directly to consumers in California and has since 2010.  Defendant is the world leader in market

7    share of LCD televisions.

8    11.     Plaintiff does not know the true names and capacities of Does 1-100 and therefore

9    uses fictitious names.  Plaintiff will amend the complaint pursuant to the Federal Rules of Civil

10   Procedure to allege the names and capacities when ascertained.

11   12.     Plaintiff is informed and believes that Defendant, its subcontractors, agents,

12   directly or else through other persons acting on its behalf, conspired to, agreed to, contributed to,

13   assisted with, and/or otherwise caused all of the wrongful acts, defects, and omissions which are

14   the subject matter of this complaint.

15                        **JURISDICTION AND VENUE**

16   13.     At all relevant times Plaintiff was a citizen and resident of Los Angeles County,

17   California.

18   14.     Defendant is a for-profit corporation organized under the laws of New York with

19   its principal place of business in New Jersey.

20   15.     This Court has jurisdiction of the subject matter of this class action pursuant to 28

21   U.S.C. § 1332(d)(2) because the amount in controversy is greater than $5,000,000, exclusive of

22   interest and costs exclusive of interest and costs, and because there is complete diversity of

23   citizenship among the parties.

24   16.     This Court has personal jurisdiction over Defendant because a substantial portion

25   _____

26   [1] Of course, there was no such disclaimer stated on any Affected Smart TV advertising or
     marketing material for the Affected Smart TVs.  In fact, if Defendant knew about the changing

27   functionality of apps, and that "features and specifications [we]re subject to change without prior
     notification" when it sold its Affected Smart TVs, yet failed to disclose that change, then

28   Defendant would have been intentionally defrauding consumers.

                                        4

1    of the wrongdoing alleged in this Complaint took place in California, Defendant is authorized to

2    do business in California, and Defendant otherwise intentionally availed itself of the markets in

3    California, each of which are sufficient bases to render the exercise of jurisdiction by this Court

4    permissible under notions of fair play and substantial justice.

5          17.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391

6    because a substantial part of the events, acts or omissions giving rise to these claims occurred in

7    the Central District of California.

8                              **STATEMENT OF FACTS**

9          18.    Plaintiff purchased a new, 2012 model Samsung Smart TV, an Affected Smart TV,

10   in the state of California, for family or household purposes.

11         19.    Defendant manufactured the television purchased by Plaintiff and used advertising

12   and marketing to educate the consuming public, including Plaintiff, about Smart TV technology.

13   That technology included but was not limited to smart televisions' new and unique ability to

14   access video streaming apps, including YouTube, directly on its Smart TVs.

15         20.    Defendant's main differentiation of Smart TVs was that, in purchasing one, a

16   consumer also purchased access to video streaming apps, including YouTube.  Defendant

17   advertised and marketed its Affected Smart TVs, including the Affected Smart TV purchased by

18   Plaintiff, by promoting its Affected Smart TVs' access to apps directly on its Affected Smart TVs,

19   including but not limited to the YouTube app.  The following are a small sample of advertising

20   and marketing of Affected Smart TVs which includes statements to the consuming public

21   regarding Affected Smart TVs' access to video streaming apps, including YouTube:

22              a.   A June 27, 2011 advertisement from Samsung stated "Samsung Smart TVs

23                   allow you to easily access apps from Samsung Apps, a growing collection of

24                   premium apps built specifically for your TV.  You can connect to your favorite

25                   digital content from Netflix, Blockbuster, Hulu Plus, YouTube, Next Level

26                   Sports from ESPN, Pandora, Facebook and Twitter – and find many other types

27                   of new interactive TV experiences.  Choose from our full line of Samsung

28                   Smart TVs."

CLASS ACTION COMPLAINT

1  (https://web.archive.org/web/20110627170223/http://www.samsung.com:80/us/

2  topic/our-smart-tvs);

3     b.  A 2011 YouTube advertisement titled, "Introduction to Samsung Smart TV"

4          focused on Smart TVs access to apps including video streaming apps and

5          YouTube.  (https://www.youtube.com/watch?v=SnBN7uamy_8);

6     c.  A 2012 interview of Samsung's then Vice President of Content, Smart Product

7          Business Development and Marketing, Eric Anderson, where he explains

8          Samsung's focus of promoting video streaming apps including YouTube.  He

9          states, referring to why Affected Smart TVs are proliferating, that "it's all about

10         access and discovery of content" and that Smart TVs uniquely provide that.  He

11         states Samsung Smart TVs are uniquely appealable to consumers because they

12         offer an "open platform" which allows consumers access to video streaming

13         apps like YouTube and consumers should rely on that open access in

14         continuing to be loyal Samsung customers.  When asked what the top five (5)

15         content apps for Samsung Smart TVs are, he states "47% of most of the apps

16         downloaded are video in nature . . . **YouTube has been number one or number**

17         **two or three for two years now and people want more choice over that type of**

18         **content**."  (https://www.youtube.com/watch?v=27wyji8t3gk);

19     d.  Plaintiff's Affected Smart TV's packaging includes prominent advertising of

20         "YouTube" access with his Smart TV but no disclaimers about the potential

21         loss of YouTube accessibility in the future;

22     e.  On information and belief, from 2010 through 2014 Defendant used its

23         packaging to prominently advertise and market its Affected Smart TVs' access

24         to the "Smart Hub" platform which included access to the YouTube app without

25         disclaiming that access to YouTube could or would be interrupted at any date

26         before the end life of the product;

27     f.  On information and belief, Affected Smart TVs manufactured by Defendant

28         from 2010 through 2014 came in packaging that prominently displayed the

YouTube logo and informed consumers that the Smart TV they were considering purchasing would provide access to YouTube for the life of the product – in fact, some of Defendant's Smart TVs that are still on retailers' shelves include this deceptive indication that YouTube will be available for the life of the product;

g.  On information and belief, Defendant's in-store advertising and marketing prominently promoted its Affected Smart TVs' access to YouTube – in fact, much of Defendant's current in-store advertising, marketing and in-store displays prominently use the YouTube logo to deceive consumers into thinking that YouTube access will be available for the life of the product which is a feature Defendant cannot guarantee.

21.     From approximately 2010 to the present YouTube has been one of the most sought after and popular apps for streaming video content.  Unlike some other apps, YouTube does not require users to purchase a monthly subscription.  Instead, if a Smart TV can access YouTube, then users with such access can view millions of videos without the need to purchase anything aside from the Smart TV.  In other words, having access to the YouTube app on a Smart TV conveys a substantial benefit and real value to users that can access its streaming content without the need for any additional monetary expenditures.

22.     When making his decision to purchase the specific Affected Samsung Smart TV that he purchased, Plaintiff reasonably relied on advertising and marketing from Defendant about what Defendant's Affected Smart TV could do; specifically, Plaintiff purchased the specific Affected Smart TV that he purchased because it would allow him to access YouTube without the need for any additional monetary expenditure.

23.     Plaintiff and the Class were exposed to reasonably relied upon representations made by Defendant regarding its Affected Smart TVs' access to YouTube and that such access would be available for the life of the product.

24.     If Plaintiff was made aware that the Affected Smart TV he ultimately purchased would not have access to YouTube, or would in some date in the future lose access to YouTube,

CLASS ACTION COMPLAINT

he would have made a different purchasing decision.  Plaintiff would have either decided to purchase a non-smart television, another brand that would provide access to YouTube for the life of the product, or pay less for a television due to the loss of YouTube accessibility.

25.     Plaintiff understood that, based on Defendant's marketing of its smart televisions, Defendant's Affected Smart TVs came with access to YouTube included in the price offered for the life of the product.  At no point was it communicated to Plaintiff or otherwise disclaimed that YouTube access could or would be discontinued.

26.     When YouTube access on Defendant's Affected Smart TVs ended on June 26, 2017, Plaintiff and the Class were injured by a loss of YouTube functionality on Affected Smart TVs manufactured by Defendant between, at least, 2010 and 2013.

27.     On information and belief, Defendant and YouTube agreed to have YouTube pre-installed on all Affected Smart TVs sold by Defendant between 2010 and 2013.  The version of YouTube that was pre-loaded on the Affected Smart TVs during that time frame was eventually changed and upgraded to an HTML5-based app for a variety of reasons, including to have "up next" information for users and to assist YouTube with advertising.  After the upgrade, YouTube continued to provide content to older Affected Smart TVs for some time while shifting its main focus in streaming content to HTML5-based content.  Eventually, YouTube sought to discontinue providing its flash-based content to older Affected Smart TVs sometime in or about 2014 or 2015, but YouTube delayed cessation of content streaming to flash-based systems by another several years.

28.     On or about June 26, 2017, Plaintiff's 2012 model Samsung Smart TV stopped providing access to the YouTube App.  On or about that same date, the YouTube app was similarly inaccessible from all Affected Smart TVs manufactured by Defendant, nationwide, from approximately 2010 to 2013.

**CLASS ACTION ALLEGATIONS**

29.     This action is brought on behalf of the following classes:

a.   Class 1:  All persons in the United States that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly

1    access YouTube streaming video content.

2    b.   Alaska Subclass:  All Alaska residents, including former Alaska residents, that

3    purchased new, and still own, a Samsung Smart TV that beginning in June

4    2017, lost its ability to directly access YouTube streaming video content.

5    c.   Arizona Subclass:  All Arizona residents, including former Arizona residents,

6    that purchased new, and still own, a Samsung Smart TV that beginning in June

7    2017, lost its ability to directly access YouTube streaming video content.

8    d.   California Subclass:  All California residents, including former California

9    residents, that purchased new, and still own, a Samsung Smart TV that

10   beginning in June 2017, lost its ability to directly access YouTube streaming

11   video content.

12   e.   Connecticut Subclass:  All Connecticut residents, including former Connecticut

13   residents, that purchased new, and still own, a Samsung Smart TV that

14   beginning in June 2017, lost its ability to directly access YouTube streaming

15   video content.

16   f.   Delaware Subclass:  All Delaware residents, including former Delaware

17   residents, that purchased new, and still own, a Samsung Smart TV that

18   beginning in June 2017, lost its ability to directly access YouTube streaming

19   video content.

20   g.   District of Columbia Subclass:  All District of Columbia residents, including

21   former District of Columbia residents, that purchased new, and still own, a

22   Samsung Smart TV that beginning in June 2017, lost its ability to directly

23   access YouTube streaming video content.

24   h.   Florida Subclass:  All Florida residents, including former Florida residents, that

25   purchased new, and still own, a Samsung Smart TV that beginning in June

26   2017, lost its ability to directly access YouTube streaming video content.

27   i.   Georgia Subclass:  All Georgia residents, including former Georgia residents,

28   that purchased new, and still own, a Samsung Smart TV that beginning in June

9

2017, lost its ability to directly access YouTube streaming video content.

j.   Hawaii Subclass:  All Hawaii residents, including former Hawaii residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

k.   Illinois Subclass:  All Illinois residents, including former Illinois residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

l.   Maine Subclass:  All Maine residents, including former Maine residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

m.   Maryland Subclass:  All Maryland residents, including former Maine residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

n.   Massachusetts Subclass:  All Massachusetts residents, including former Massachusetts residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

o.   Michigan Subclass:  All Michigan residents, including former Michigan residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

p.   Minnesota Subclass:  All Minnesota residents, including former Minnesota residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

q.   Missouri Subclass:  All Missouri residents, including former Missouri residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

10

r.  New Hampshire Subclass:  All New Hampshire residents, including former New Hampshire Residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

s.  New Jersey Subclass:  All New Jersey residents, including former New Jersey residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

t.  New York Subclass:  All New York residents, including former New York residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

u.  North Carolina Subclass:  All North Carolina residents, including former North Carolina residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

v.  North Dakota Subclass:  All North Dakota residents, including former North Dakota residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

w.  Ohio Subclass:  All Ohio residents, including former Ohio residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

x.  Rhode Island Subclass:  All Rhode Island residents, including former Rhode Island residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

y.  Texas Subclass:  All Texas residents, including former Texas residents, that

11

purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

z.  Vermont Subclass:  All Vermont residents, including former Vermont residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

aa. Washington Subclass:  All Washington residents, including former Washington residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

bb. West Virginia Subclass:  All West Virginia residents, including former West Virginia residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

30.     Excluded from the Classes are Defendant, its legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest.  Also, excluded from the Classes is the judge to whom this case is assigned, the Judge's immediate family, and Plaintiff's counsel and their employees.  Plaintiff reserves the right to amend the above-stated class definitions based on facts learned in discovery.

31.     Plaintiff alleges on information and belief, and based on Defendant's 2012 Annual Report, that the Class is so numerous that joinder of all members of the Class is impractical. Defendant's 2012 Annual Report states, among other things, that "Samsung Electronics has earned No. 1 global market share across all TV categories every year from 2006 through 2012, including flat panel TVs and LCD TVs.  Despite the depressed TV market, we maintained our dominant position by extending our sales lead over competitors in advanced North American and European markets, as well as in emerging markets like Asia, Africa and Latin America.  That striking performance was built on ultra large size premium Smart TV models, such as the ES9000 and ES8000, with innovative and differentiated quality and design."  Its 2012 Annual Report claimed "37.22% - Top Global Smart TV Market Share in 2012."  In 2010, 2011, and 2012 there

1 | were 114,900,000, 163,000,000, and 227,800,000 respectively, Smart TVs connected to the

2 | internet.  https://www.statista.com/statistics/247160/forecast-of-the-number-of-connected-tv-sets-

3 | worldwide/.  According to Defendant, the majority of Smart TVs were connected in the "advanced

4 | North American and European markets."

5 |     32.     Common questions of law and fact exist as to all members of the Class and

6 | predominate over any questions affecting only individual Class members.  These common legal

7 | and factual questions include but are not limited to the following:

8 |         a.   Whether Defendant breached an implied in law contract with the Class by

9 |              failing to provide YouTube access for the life of Affected Smart TVs sold to

10 |             consumers;

11 |        b.   Whether Defendant was unjustly enriched by selling Affected Smart TVs to the

12 |             Class for sums of money that represented those Affected Smart TVs' full

13 |             functionality, specifically access to YouTube, for the life of the product only

14 |             for those Affected Smart TVs to lose substantial value on June 26, 2017, at

15 |             which point Defendant refused to refund the diminution of value to the Class;

16 |        c.   Whether Defendant violated the covenant of good faith and fair dealing to the

17 |             Class when it failed to deliver full functionality on its Affected Smart TVs,

18 |             specifically access to YouTube, thereby denying Plaintiff and the Class the

19 |             benefit of its bargained for exchange;

20 |        d.   Whether Defendant negligently, willfully, and/or knowingly caused the sale of

21 |             Affected Smart TVs to consumers without providing access key applications

22 |             such as YouTube for the life of the product;

23 |        e.   Whether Defendant failed to adequately design its Affected Smart TVs to

24 |             support any and all updates necessary to continue critical applications such as

25 |             YouTube;

26 |        f.   Whether Defendant failed to exercise reasonable care in engineering designing,

27 |             and updating its Affected Smart TVs to ensure the applications it marketed to

28 |             consumers could be supported for the life of the product;

g.   Whether Defendant failed to warn consumers that YouTube may be discontinued, without support on Affected Smart TVs;

h.   Whether Defendant's conduct violated the consumer protection laws of the twenty-seven (27) enumerated subclasses set forth above;

i.   Whether a reasonable consumer would have relied on Defendant's advertising and marketing related to its Affected Smart TVs being able to access YouTube for the life of the product;

j.   To what extent, without access to YouTube, the value of Defendant's Affected Smart TVs has been diminished.

33.   Plaintiff's claims are typical of the Class' and within each subclass and are based on the same facts, legal theories and/or primary rights of all Class members, because when YouTube access on all of Defendant's Affected Smart TVs stopped on June 26, 2017, each Affected Smart TV owned by Plaintiff and the Class lost value due to its substantial loss of functionality.  The class action procedure is also superior to individual lawsuits due to the massive volume of potential individual lawsuits and the similarities that persist in each Class member's claims when compared against the predicted amount of recovery per Class member.

34.   Plaintiff will adequately and fairly protect the interests of the Class and each subclass.  He has retained counsel experienced in class action litigation.  Neither Plaintiff nor his counsel have any interest that might cause them to not vigorously pursue this action in the Class' and subclass' best interests.

35.   Certification of the Class and each subclass is proper under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

36.   Plaintiff and his counsel anticipates that notice to the proposed Class will be effectuated by, at least, publication to allow class members to self-identify as members of the Class.

///

///

///

# FIRST CAUSE OF ACTION

**(Breach of Contract – *By Plaintiff on behalf of the Class, against Defendant and Does 1-100*)**

37.     Plaintiff and the Class repeat and reallege each and every allegation above as if set forth in full herein.

38.     Defendant offered its specific models of Affected Smart TVs to consumers for specific prices.  Those prices were based on the complete product and functionality the consumer would purchase.  Defendant's offer promised, as evinced by Defendant's advertising, packaging, promoting, etc., that the Affected Smart TV being purchased included access to the YouTube app via the Affected Smart TV for the life of the product.

39.     Defendant intended Plaintiff and the Class to be the beneficiary of the promised performance of its Affected Smart TVs; namely, that Affected Smart TVs would provide access to YouTube without additional expense for the life of the product.

40.     Plaintiff and the Class accepted Defendant's offer by purchasing Affected Smart TVs and paying Defendant's requested price.

41.     Defendant breached its contract with Plaintiff and the Class on June 26, 2017, when its Affected Smart TVs stopped providing access to YouTube.

42.     Defendant further breached the implied covenant of good faith and fair dealing by failing to offer any no-cost solution to restore access to YouTube on Plaintiff's and the Class's Affected Smart TVs.

43.     Plaintiff and the Class incurred damages resulting from Defendant's breach including but not limited to a diminution of value of each and every Affected Smart TV due to the loss of YouTube functionality on those devices.

# SECOND CAUSE OF ACTION

**(Unjust Enrichment/Quasi Contract – *By Plaintiff on behalf of the Class, against Defendant and Does 1-100*)**

44.     Plaintiff and the Class repeat and reallege each and every allegation above as if set forth in full herein.

45.     Defendant received certain amounts of monies from Plaintiff and the Class for the

specific models of Affected Smart TVs it sold to consumers.  Those prices were based on the complete product and functionality the consumer would purchase which included access to the YouTube app via the Affected Smart TV for the life of the product.

46.     Plaintiff and the Class paid certain amounts of monies to Defendant for specific Affected Smart TVs; Affected Smart TVs that were promised to provide YouTube access for the life of the product.

47.     Had Plaintiff and the Class understood that YouTube access would not be available for the life of the product they would have, at least, paid less money to Defendant for the Affected Smart TVs they purchased.

48.     Defendant's retention of monies received from Plaintiff and the Class unjustly enriches Defendant to this day to the detriment of Plaintiff and the Class.

## THIRD CAUSE OF ACTION

**(Negligent Misrepresentation – *By Plaintiff on behalf of the Class, against Defendant and Does 1-100*)**

49.     Plaintiff and the Class repeat and reallege each and every allegation above as if set forth in full herein.

50.     Defendant made multiple, uniform material misrepresentations to Plaintiff and the Class; specifically, that one of the world's most popular video streaming apps, YouTube, would be available on Affected Smart TVs for the life of the products.  YouTube functionality for the life of the product was a material misrepresentation not only due to the popularity of YouTube as a video streaming app, but especially because, unlike other video streaming apps available on Affected Smart TVs, YouTube app functionality on Affected Smart TVs came without the additional subscription expenditure required to access similar video streaming apps such as Netflix and Hulu.

51.     Plaintiff and the Class reasonably believed that YouTube access would be available for the life of Affected Smart TVs because Defendant failed to disclaim or otherwise warn that YouTube functionality could or would cease to be provided on Affected Smart TVs at any time before the end of life of Affected Smart TVs.  In addition, because Defendant took it upon itself to educate Plaintiff and the Class about what Smart TVs provided and why they should pay a

premium to purchase a Smart TV as opposed to a normal television and because Smart TV technology was new technology, it was reasonable for Plaintiff and the Class to believe Defendant's representations about YouTube app functionality being available for the life of the product.  Without owning YouTube or having a written agreement guaranteeing access to YouTube for the life of the product on Affected Smart TVs, Defendant had no reason to believe that YouTube access would be available on Affected Smart TVs for the life of those products.

52.     Defendant intended that Plaintiff and the Class would rely on its representations regarding YouTube access being available for the life of the product.  Its intent is manifested by the prominent placement of the YouTube app logo in its advertising, marketing and promotion of the Affected Smart TVs as well as on its packaging.

53.     Plaintiff and the Class were justified in relying on Defendant's representations regarding YouTube accessibility on Affected Smart TVs because, during the time in question, Smart TV technology was relatively new and reasonable consumers had no reason to expect that accessibility could or would cease on their Affected Smart TVs.

54.     Plaintiff and the Class were and currently remain damaged as a result of Defendant's misrepresentations by having their Affected Smart TVs lose functionality and value by no longer having access to the YouTube app.

## **FOURTH CAUSE OF ACTION**

**(Violation of Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. Ann. §§ 45.50.471,** *et seq.* **– By Plaintiff on behalf of Alaska Subclass, against Defendant and Does 1-100)**

55.     Plaintiff and the Alaska Subclass repeat and reallege each and every allegation above as if set forth in full herein.

56.     Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and the Alaska Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of Alaska Stat. Ann. § 45.50.471(b)(4).

57.     Defendant intended that consumers would rely on the characteristics, uses and

1  benefits it represented regarding its Affected Smart TVs.

2        58.    Defendant's unfair and deceptive representations occurred in trade or commerce.

3        59.    Defendant's representation was unfair and deceptive resulting in an ascertainable

4  economic injury to Plaintiff and the Alaska Subclass.

5  **FIFTH CAUSE OF ACTION**

6  **(Violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.* – By Plaintiff on behalf of Arizona Subclass, against Defendant and Does 1-100)**

7

8        60.    Plaintiff and the Arizona Subclass repeat and reallege each and every allegation above as if set forth in full herein.

9

10        61.    Defendant represented through advertising, marketing, packaging and by educating

11  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

12  TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and

13  the Arizona Subclass represented characteristics, uses and benefits that Defendant's Affected

14  Smart TVs did not possess in violation of law.

15        62.    Defendant intended that consumers would rely on the characteristics, uses and

16  benefits it represented regarding its Affected Smart TVs.

17        63.    Defendant's unfair and deceptive representations occurred in trade or commerce.

18        64.    Defendant's representation was unfair and deceptive resulting in an ascertainable

19  economic injury to Plaintiff and the Arizona Subclass.

20  **SIXTH CAUSE OF ACTION**

21  **(Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* – By Plaintiff on behalf of California Subclass, against Defendant and Does 1-100)**

22        65.    Plaintiff and the California Subclass repeat and reallege each and every allegation

23  above as if set forth in full herein.

24        66.    Defendant represented through advertising, marketing, packaging and by educating

25  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

26  TVs would have access to YouTube for the life of the product.  That material representation to

27  Plaintiff and the California Subclass represented characteristics, uses and benefits that Defendant's

28  Affected Smart TVs did not possess in violation of law.

67.     Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

68.     Defendant's unfair and deceptive representations occurred in trade or commerce.

69.     Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the California Subclass.

**SEVENTH CAUSE OF ACTION**

**(Violation of California Business and Professions Code, Cal. Bus. & Prof. Code §§ 17200, *et seq. – By Plaintiff on behalf of California Subclass, against Defendant and Does 1-100*)**

70.     Plaintiff and the California Subclass repeat and reallege each and every allegation above as if set forth in full herein.

71.     Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff and the California Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess which was unfair.

72.     Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

73.     Defendant's unfair and deceptive representations occurred in trade or commerce.

74.     Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the California Subclass requiring restitution.

**EIGHTH CAUSE OF ACTION**

**(Violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110a, *et seq. – By Plaintiff on behalf of Connecticut Subclass, against Defendant and Does 1-100*)**

75.     Plaintiff and the Connecticut Subclass repeat and reallege each and every allegation above as if set forth in full herein.

76.     Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and

the Connecticut Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

77.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

78.   Defendant's unfair and deceptive representations occurred in trade or commerce.

79.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Connecticut Subclass.

## NINTH CAUSE OF ACTION

**(Violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511, *et seq.* – By Plaintiff on behalf of Delaware Subclass, against Defendant and Does 1-100)**

80.   Plaintiff and the Delaware Subclass repeat and reallege each and every allegation above as if set forth in full herein.

81.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and the Delaware Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

82.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

83.   Defendant's unfair and deceptive representations occurred in trade or commerce.

84.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Delaware Subclass.

## TENTH CAUSE OF ACTION

**(Violation of District of Columbia's Consumer Protection Procedures Act, D.C. Code Ann. §§ 28-3901, *et seq.* – By Plaintiff on behalf of District of Columbia Subclass, against Defendant and Does 1-100)**

85.   Plaintiff and the District of Columbia Subclass repeat and reallege each and every allegation above as if set forth in full herein.

86.   Defendant represented through advertising, marketing, packaging and by educating

1    the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

2    TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and

3    the District of Columbia Subclass represented characteristics, uses and benefits that Defendant's

4    Affected Smart TVs did not possess in violation of law.

5         87.    Defendant intended that consumers would rely on the characteristics, uses and

6    benefits it represented regarding its Affected Smart TVs.

7         88.    Defendant's unfair and deceptive representations occurred in trade or commerce.

8         89.    Defendant's representation was unfair and deceptive resulting in an ascertainable

9    economic injury to Plaintiff and the District of Columbia Subclass.

**ELEVENTH CAUSE OF ACTION**

**(Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq. – By Plaintiff on behalf of Florida Subclass, against Defendant and Does 1-100*)**

13         90.    Plaintiff and the Florida Subclass repeat and reallege each and every allegation

14    above as if set forth in full herein.

15         91.    Defendant represented through advertising, marketing, packaging and by educating

16    the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

17    TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and

18    the Florida Subclass represented characteristics, uses and benefits that Defendant's Affected Smart

19    TVs did not possess in violation of law.

20         92.    Defendant intended that consumers would rely on the characteristics, uses and

21    benefits it represented regarding its Affected Smart TVs.

22         93.    Defendant's unfair and deceptive representations occurred in trade or commerce.

23         94.    Defendant's representation was unfair and deceptive resulting in an ascertainable

24    economic injury to Plaintiff and the Florida Subclass.

**TWELFTH CAUSE OF ACTION**

**(Violation of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq. – By Plaintiff on behalf of Georgia Subclass, against Defendant and Does 1-100*)**

28         95.    Plaintiff and the Georgia Subclass repeat and reallege each and every allegation

21

above as if set forth in full herein.

96.    Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and the Georgia Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

97.    Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

98.    Defendant's unfair and deceptive representations occurred in trade or commerce.

99.    Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Georgia Subclass.

## THIRTEENTH CAUSE OF ACTION

**(Violation of Hawaii's Unfair Practices Act, Haw. Rev. Stat. Ann. §§ 480-1, *et seq.* – By Plaintiff on behalf of Hawaii Subclass, against Defendant and Does 1-100)**

100.    Plaintiff and the Hawaii Subclass repeat and reallege each and every allegation above as if set forth in full herein.

101.    Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiff and the Hawaii Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

102.    Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

103.    Defendant's unfair and deceptive representations occurred in trade or commerce.

104.    Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Hawaii Subclass.

///

///

**FOURTEENTH CAUSE OF ACTION**

**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq. – By Plaintiff on behalf of Illinois Subclass, against Defendant and Does 1-100*)**

105.   Plaintiff and the Illinois Subclass repeat and reallege each and every allegation above as if set forth in full herein.

106.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff and the Illinois Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

107.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

108.   Defendant's unfair and deceptive representations occurred in trade or commerce.

109.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Illinois Subclass.

**FIFTEENTH CAUSE OF ACTION**

**(Violation of Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205-A, *et seq. – By Plaintiff on behalf of Maine Subclass, against Defendant and Does 1-100*)**

110.    Plaintiff and the Maine Subclass repeat and reallege each and every allegation above as if set forth in full herein.

111.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff and the Maine Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

112.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

113.   Defendant's unfair and deceptive representations occurred in trade or commerce.

1    114.   Defendant's representation was unfair and deceptive resulting in an ascertainable

2    economic injury to Plaintiff and the Maine Subclass.

3                        **SIXTEENTH CAUSE OF ACTION**

4    **(Violation of Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-
     101, *et seq. – By Plaintiff on behalf of Maryland Subclass, against Defendant***
5    ***and Does 1-100*)**

6    115.    Plaintiff and the Maryland Subclass repeat and reallege each and every allegation

7    above as if set forth in full herein.

8    116.   Defendant represented through advertising, marketing, packaging and by educating

9    the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

10   TVs would have access to YouTube for the life of the product.  That material representation to

11   Plaintiff and the Maryland Subclass represented characteristics, uses and benefits that Defendant's

12   Affected Smart TVs did not possess in violation of law.

13   117.   Defendant intended that consumers would rely on the characteristics, uses and

14   benefits it represented regarding its Affected Smart TVs.

15   118.   Defendant's unfair and deceptive representations occurred in trade or commerce.

16   119.   Defendant's representation was unfair and deceptive resulting in an ascertainable

17   economic injury to Plaintiff and the Maryland Subclass.

18                       **SEVENTEENTH CAUSE OF ACTION**

19   **(Violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1,
     *et seq. – By Plaintiff on behalf of Massachusetts Subclass, against Defendant***
20   ***and Does 1-100*)**

21   120.    Plaintiff and the Massachusetts Subclass repeat and reallege each and every

22   allegation above as if set forth in full herein.

23   121.   Defendant represented through advertising, marketing, packaging and by educating

24   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

25   TVs would have access to YouTube for the life of the product.  That material representation to

26   Plaintiff and the Massachusetts Subclass represented characteristics, uses and benefits that

27   Defendant's Affected Smart TVs did not possess in violation of law.

28   122.   Defendant intended that consumers would rely on the characteristics, uses and

24

1    benefits it represented regarding its Affected Smart TVs.

2        123.   Defendant's unfair and deceptive representations occurred in trade or commerce.

3        124.   Defendant's representation was unfair and deceptive resulting in an ascertainable

4    economic injury to Plaintiff and the Massachusetts Subclass.

5                                **EIGHTEENTH CAUSE OF ACTION**

6    **(Violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. §§**
     **445.901, *et seq.* – *By Plaintiff on behalf of Michigan Subclass, against Defendant***
7                                     ***and Does 1-100*)**

8        125.   Plaintiff and the Michigan Subclass repeat and reallege each and every allegation

9    above as if set forth in full herein.

10       126.   Defendant represented through advertising, marketing, packaging and by educating

11   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

12   TVs would have access to YouTube for the life of the product.  That material representation to

13   Plaintiff and the Michigan Subclass represented characteristics, uses and benefits that Defendant's

14   Affected Smart TVs did not possess in violation of law.

15       127.   Defendant intended that consumers would rely on the characteristics, uses and

16   benefits it represented regarding its Affected Smart TVs.

17       128.   Defendant's unfair and deceptive representations occurred in trade or commerce.

18       129.   Defendant's representation was unfair and deceptive resulting in an ascertainable

19   economic injury to Plaintiff and the Michigan Subclass.

20                                **NINETEENTH CAUSE OF ACTION**

21   **(Violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.67,**
     ***et seq.* – *By Plaintiff on behalf of Minnesota Subclass, against Defendant***
22                                    ***and Does 1-100*)**

23       130.   Plaintiff and the Minnesota Subclass repeat and reallege each and every allegation

24   above as if set forth in full herein.

25       131.   Defendant represented through advertising, marketing, packaging and by educating

26   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

27   TVs would have access to YouTube for the life of the product.  That material representation to

28   Plaintiff and the Minnesota Subclass represented characteristics, uses and benefits that

                                           25

1  Defendant's Affected Smart TVs did not possess in violation of law.

2      132.  Defendant intended that consumers would rely on the characteristics, uses and

3  benefits it represented regarding its Affected Smart TVs.

4      133.  Defendant's unfair and deceptive representations occurred in trade or commerce.

5      134.  Defendant's representation was unfair and deceptive resulting in an ascertainable

6  economic injury to Plaintiff and the Minnesota Subclass.

7  **TWENTIETH CAUSE OF ACTION**

8  **(Violation of Missouri's Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010, *et***
   ***seq. – By Plaintiff on behalf of Missouri Subclass, against Defendant and Does 1-100*)**

9

10     135.  Plaintiff and the Missouri Subclass repeat and reallege each and every allegation

   above as if set forth in full herein.

11

12     136.   Defendant represented through advertising, marketing, packaging and by educating

13  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

14  TVs would have access to YouTube for the life of the product.  That material representation to

   Plaintiff and the Missouri Subclass represented characteristics, uses and benefits that Defendant's
15
   Affected Smart TVs did not possess in violation of law.
16
       137.  Defendant intended that consumers would rely on the characteristics, uses and
17
   benefits it represented regarding its Affected Smart TVs.
18
       138.   Defendant's unfair and deceptive representations occurred in trade or commerce.
19
       139.   Defendant's representation was unfair and deceptive resulting in an ascertainable
20
   economic injury to Plaintiff and the Missouri Subclass.
21
22  **TWENTY-FIRST CAUSE OF ACTION**

23  **(Violation of New Hampshire's N.H. Consumer Protection Act, N.H. Rev. Stat. Ann. §§**
   **358-A:1, *et seq. – By Plaintiff on behalf of New Hampshire Subclass, against Defendant***
   ***and Does 1-100*)**

24
25     134.   Plaintiff and the New Hampshire Subclass repeat and reallege each and every

   allegation above as if set forth in full herein.
26
       135.   Defendant represented through advertising, marketing, packaging and by educating
27
   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart
28

**CLASS ACTION COMPLAINT**

TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff and the New Hampshire Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

136.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

137.   Defendant's unfair and deceptive representations occurred in trade or commerce.

138.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the New Hampshire Subclass.

## TWENTY-SECOND CAUSE OF ACTION

**(Violation of New Jersey's Unfair Trade Practices Act, N.J. Stat. Ann. §§ 56:8-19, *et seq. – By Plaintiff on behalf of New Jersey Subclass, against Defendant and Does 1-100*)**

139.   Plaintiff and the New Jersey Subclass repeat and reallege each and every allegation above as if set forth in full herein.

140.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff and the New Jersey Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

141.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

142.   Defendant's unfair and deceptive representations occurred in trade or commerce.

143.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the New Jersey Subclass.

## TWENTY-THIRD CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.* and §§ 350, *et seq. – By Plaintiff on behalf of New York Subclass, against Defendant and Does 1-100*)**

144.   Plaintiff and the New York Subclass repeat and reallege each and every allegation above as if set forth in full herein.

CLASS ACTION COMPLAINT

1    145.    Defendant represented through advertising, marketing, packaging and by educating

2    the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

3    TVs would have access to YouTube for the life of the product.  That material representation to

4    Plaintiff and the New York Subclass represented characteristics, uses and benefits that

5    Defendant's Affected Smart TVs did not possess in violation of law.

6    146.    Defendant intended that consumers would rely on the characteristics, uses and

7    benefits it represented regarding its Affected Smart TVs.

8    147.    Defendant's unfair and deceptive representations occurred in trade or commerce.

9    148.    Defendant's representation was unfair and deceptive resulting in an ascertainable

10   economic injury to Plaintiff and the New York Subclass.

11   ### TWENTY-FOURTH CAUSE OF ACTION

12   **(Violation of North Carolina's Monopolies, Trusts and Consumer Protection Act, N.C.
     Gen. Stat. §§ 75-1, *et seq. – By Plaintiff on behalf of North Carolina Subclass, against*
13   *Defendant and Does 1-100*)**

14   149.    Plaintiff and the North Carolina Subclass repeat and reallege each and every

15   allegation above as if set forth in full herein.

16   150.    Defendant represented through advertising, marketing, packaging and by educating

17   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

18   TVs would have access to YouTube for the life of the product.  That material representation to

19   Plaintiff and the North Carolina Subclass represented characteristics, uses and benefits that

20   Defendant's Affected Smart TVs did not possess in violation of law.

21   151.    Defendant intended that consumers would rely on the characteristics, uses and

22   benefits it represented regarding its Affected Smart TVs.

23   152.    Defendant's unfair and deceptive representations occurred in trade or commerce.

24   153.    Defendant's representation was unfair and deceptive resulting in an ascertainable

25   economic injury to Plaintiff and the North Carolina Subclass.

26   ///

27   ///

28   ///

1

2 **TWENTY-FIFTH CAUSE OF ACTION**

3 **(Violation of North Dakota's Consumer Fraud statute, N.D. Cent. Code §§ 51-15-01, *et seq.* – By Plaintiff on behalf of North Dakota Subclass, against Defendant
and Does 1-100)**

4

5 154.    Plaintiff and the North Dakota Subclass repeat and reallege each and every

6 allegation above as if set forth in full herein.

7 155.    Defendant represented through advertising, marketing, packaging and by educating

8 the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

9 TVs would have access to YouTube for the life of the product.  That material representation to

10 Plaintiff and the North Dakota Subclass represented characteristics, uses and benefits that

11 Defendant's Affected Smart TVs did not possess in violation of law.

12 156.    Defendant intended that consumers would rely on the characteristics, uses and

13 benefits it represented regarding its Affected Smart TVs.

14 157.    Defendant's unfair and deceptive representations occurred in trade or commerce.

15 158.    Defendant's representation was unfair and deceptive resulting in an ascertainable

16 economic injury to Plaintiff and the North Dakota Subclass.

17 **TWENTY-SIXTH CAUSE OF ACTION**

18 **(Violation of Ohio's Consumer Sales Protection Act, Ohio Rev. Code Ann. §§ 1345.01,
*et seq.* – By Plaintiff on behalf of Ohio Subclass, against Defendant and Does 1-100)**

19

20 159.    Plaintiff and the Ohio Subclass repeat and reallege each and every allegation above

21 as if set forth in full herein.

22 160.    Defendant represented through advertising, marketing, packaging and by educating

23 the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

24 TVs would have access to YouTube for the life of the product.  That material representation to

25 Plaintiff and the Ohio Subclass represented characteristics, uses and benefits that Defendant's

Affected Smart TVs did not possess in violation of law.

26 161.    Defendant intended that consumers would rely on the characteristics, uses and

27 benefits it represented regarding its Affected Smart TVs.

28

1    162.    Defendant's unfair and deceptive representations occurred in trade or commerce.

2    163.    Defendant's representation was unfair and deceptive resulting in an ascertainable

3    economic injury to Plaintiff and the Ohio Subclass.

4    **TWENTY-SEVENTH CAUSE OF ACTION**

5    **(Violation of Rhode Island's Unfair Trade Practices & Consumer Protection Act, Ri.
     Gen. Laws §§ 6-13.1-1, *et seq. – By Plaintiff on behalf of Rhode Island Subclass, against
6    Defendant and Does 1-100*)**

7    164.    Plaintiff and the Rhode Island Subclass repeat and reallege each and every

8    allegation above as if set forth in full herein.

9    165.    Defendant represented through advertising, marketing, packaging and by educating

10   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

11   TVs would have access to YouTube for the life of the product.  That material representation to

12   Plaintiff and the Rhode Island Subclass represented characteristics, uses and benefits that

13   Defendant's Affected Smart TVs did not possess in violation of law.

14   166.    Defendant intended that consumers would rely on the characteristics, uses and

15   benefits it represented regarding its Affected Smart TVs.

16   167.    Defendant's unfair and deceptive representations occurred in trade or commerce.

17   168.    Defendant's representation was unfair and deceptive resulting in an ascertainable

18   economic injury to Plaintiff and the Rhode Island Subclass.

19   **TWENTY-EIGHTH CAUSE OF ACTION**

20   **(Violation of Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et
     seq. – By Plaintiff on behalf of Texas Subclass, against Defendant and Does 1-100*)**

21
22   169.    Plaintiff and the Texas Subclass repeat and reallege each and every allegation

     above as if set forth in full herein.
23
24   170.    Defendant represented through advertising, marketing, packaging and by educating

25   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

26   TVs would have access to YouTube for the life of the product.  That material representation to

     Plaintiff and the Texas Subclass represented characteristics, uses and benefits that Defendant's
27
     Affected Smart TVs did not possess in violation of law.
28

171.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

172.   Defendant's unfair and deceptive representations occurred in trade or commerce.

173.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Texas Subclass.

## TWENTY-NINTH CAUSE OF ACTION

**(Violation of Vermont's Consumer Fraud Law, 9 Vt. Stat. Ann. Tit. 9, §§ 2451, *et seq.* – By Plaintiff on behalf of Vermont Subclass, against Defendant and Does 1-100)**

174.   Plaintiff and the Vermont Subclass repeat and reallege each and every allegation above as if set forth in full herein.

175.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff and the Vermont Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

176.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

177.   Defendant's unfair and deceptive representations occurred in trade or commerce.

178.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiff and the Vermont Subclass.

## THIRTIETH CAUSE OF ACTION

**(Violation of Washington's Unfair Business Practices – Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.010, *et seq.* – By Plaintiff on behalf of Washington Subclass, against Defendant and Does 1-100)**

179.   Plaintiff and the Washington Subclass repeat and reallege each and every allegation above as if set forth in full herein.

180.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to

31

1   Plaintiff and the Washington Subclass represented characteristics, uses and benefits that

2   Defendant's Affected Smart TVs did not possess in violation of law.

3       181.    Defendant intended that consumers would rely on the characteristics, uses and

4   benefits it represented regarding its Affected Smart TVs.

5       182.    Defendant's unfair and deceptive representations occurred in trade or commerce.

6       183.    Defendant's representation was unfair and deceptive resulting in an ascertainable

7   economic injury to Plaintiff and the Washington Subclass.

8                       **THIRTY-FIRST CAUSE OF ACTION**

9   **(Violation of West Virginia's Consumer Credit and Protection Act, W.Va. Code Ann. §§ 46A-1-101, *et seq.* – *By Plaintiff on behalf of West Virginia Subclass, against Defendant and Does 1-100*)**

10

11      184.    Plaintiff and the West Virginia Subclass repeat and reallege each and every

12  allegation above as if set forth in full herein.

13      185.    Defendant represented through advertising, marketing, packaging and by educating

14  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

15  TVs would have access to YouTube for the life of the product.  That material representation to

16  Plaintiff and the West Virginia Subclass represented characteristics, uses and benefits that

17  Defendant's Affected Smart TVs did not possess in violation of law.

18      186.    Defendant intended that consumers would rely on the characteristics, uses and

19  benefits it represented regarding its Affected Smart TVs.

20      187.    Defendant's unfair and deceptive representations occurred in trade or commerce.

21      188.    Defendant's representation was unfair and deceptive resulting in an ascertainable

22  economic injury to Plaintiff and the West Virginia Subclass.

23                          **PRAYER FOR RELIEF**

24      WHEREFORE, Plaintiff and the Class pray for relief as follows:

25      1.      Certification of Plaintiff's class action claims pursuant to Federal Rule of Civil

26  Procedure 23;

27      2.      Designation of Plaintiff as an adequate class representative for Class Members;

28      3.      Designation of Plaintiff's counsel as Class Counsel;

1      4.         An award of actual, statutory, and/or punitive damages for to the extent recoverable

2 by law;

3      5.         An award of costs incurred herein, including reasonable attorneys' fees to the

4 extent allowable by law;

5      6.         An award of attorneys' fees and costs according to proof pursuant to California

6 Code of Civil Procedure section 1021.5;

7      7.         Equitable relief by way of specific performance sufficient to reinstate Affected

8 Smart TVs' access to YouTube;

9      8.         Pre-judgment and post-judgment interest, as provided by law;

10      9.         Payment of a reasonable incentive award to Plaintiff in recognition of the services

11 he has and will render in furtherance of all Class members' interests including the risks he is

12 taking litigating this case; and

13      10.      Such other and further legal and equitable relief as this Court deems necessary, just

14 and proper.

15

16                         **JURY DEMAND**

17      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this

18 action.

19

20   DATED:  November 2, 2017           **ONGARO PC**

21

22                        By:  *s/David Ongaro*

23                             David Ongaro
                            Attorneys for Plaintiff LANCE BAIRD

24

25

26

27

28