David R. Ongaro (State Bar No. 154698)
dongaro@ongaropc.com
ONGARO PC
50 California Street, Suite 3325
San Francisco, CA  94111
Telephone:      (415) 433-3900
Facsimile:      (415) 433-3950

Attorneys for Plaintiffs
LANCE BAIRD, STEVE ALTES,
LOUIS LECIEJEWSKI, and
KRISHNENDU CHAKRABORTY individually, and on
behalf of a class of others similarly situated

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE BAIRD, STEVE ALTES, LOUIS LECIEJEWSKI, and KRISHNENDU CHAKRABORTY individually, and on behalf of a class of others similarly situated, | Case No. 4:17-cv-06407-JSW |
| Plaintiffs, | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| v. | **JURY TRIAL REQUESTED** |
| SAMSUNG ELECTRONICS AMERICA, INC., a corporation; and DOES 1-100, | |
| Defendant. | |

Plaintiff Lance Baird, Plaintiff Steve Altes, Plaintiff Louis Leciejewski, and Plaintiff Krishnendu Chakraborty ("Plaintiffs"), individually and on behalf of all others similarly situated ("the Class"), allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1.      Between approximately 2010 and the present, Defendant Samsung Electronics America, Inc., ("Defendant") manufactured and sold new "smart televisions" (hereinafter "Smart TVs") to the consuming public in the United States.  At the time, Smart TVs had the new and unique capability to, among other things, access applications (hereinafter "apps") directly from the television.  Not since the advent of color television had consumers' television viewing experience changed so dramatically.  Manufacturers including Defendant took advantage of the dramatic change in television use – profits and revenues soared.

2.      Defendant sold Smart TVs to consumers by promoting them as inherently different from traditional television sets based on their ability to access entertainment apps.  Defendant promoted, through widespread uniform advertising and marketing campaigns, Smart TVs as having all the convenience of smart phones and computers with the ease and convenience of using a familiar device – the television set – in the comfort of consumers' living rooms.  To lure consumers in, Defendant advertised and marketed the most popular Smart TV entertainment apps, including Netflix, Hulu, and YouTube – which were developed specifically by Defendant to run on its Smart TVs.  Specifically, Defendant promoted Smart TVs by placing the YouTube logo on its packaging, in-store displays, and by displaying the YouTube app in its commercials and in online advertising to inform consumers that Smart TVs came with YouTube access included upon purchase.  Defendant sold its Smart TVs in a manner that also indicated it was selling access to video streaming apps, including YouTube.  Defendant promoted its new Smart TVs with instructional videos on how to access streaming devices, including YouTube, and even pre-installed YouTube in its "Smart Hub" app platform.  Smart Hub is the platform on Defendant's Smart TVs that houses entertainment apps including YouTube.

3.      Defendant promoted, through advertising and marketing that educated and

informed the consuming public, its Smart TVs as a means to access YouTube.  Through

advertising and marketing, Defendant represented to consumers that they were purchasing access

to YouTube when they purchased its Smart TVs.  At no time between 2010 through at least 2013

did Defendant disclaim that continued use of the YouTube app, for the life of its Smart TVs, could

or would end.  Defendant never warned consumers that it could not sell access to YouTube as it

had no control over or guaranteed access to YouTube's content.  Similar to how a car comes with

an engine and a house with a roof, Defendant represented to consumers that its Smart TVs came

with YouTube.  Defendant's Smart TVs were promoted as coming with a YouTube software app

that Defendant worked hand-in-glove with YouTube to develop.

https://web.archive.org/web/20120911002718/http://www.samsung.com:80/us/appstore/app/0000

00020288#.  Defendant boasted that these apps were "built for your TV [to] let you stream video."

https://web.archive.org/web/20110625112805/http://www.samsung.com:80/us/appstore/.  In

developing the app with YouTube, Defendant was required to agree to certain terms of service set

forth by YouTube.

https://web.archive.org/web/20120830204041/https://www.youtube.com/t/terms.  One of those

terms of service expressly disclaimed to Defendant, is that "YouTube reserves the right to

discontinue any aspect of the Service at any time."  (Exhibit A at § 4(J)).  YouTube also

disclaimed against "ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR

FROM OUR SERVICES."  (*Id*. at § 9).  Despite agreeing to these express disclaimers set forth by

YouTube, Defendant never passed those disclaimers along to Plaintiffs or the Class.  Further,

Defendant never presented Plaintiffs or the Class with the opportunity to discover those

disclaimers.  In other words, Defendant was uniquely aware that the YouTube provided on its

Smart TVs could be permanently stopped at any time but misrepresented that fact to Plaintiffs and

the Class at the point of sale.

   4.  The manner in which YouTube sends content to and communicates with

consumers' Smart TVs is commonly referred to its Application Programming Interface ("API").

Smart TVs manufactured in 2013 and before often ran on an older, flash-based API system.

Beginning in 2013 Smart TV manufacturers including Defendant began switching to newer

HTML5-based API systems.  Smart TVs that run on the newer HTML5 systems still provide access to YouTube.  Flash-based Smart TVs, including those manufactured by Defendant in 2013 and before no longer have access to the YouTube app.  The flash-based Smart TVs manufactured by Defendant that no longer provide access to YouTube are hereinafter referred to as "Affected Smart TVs."

5.     On or about June 26, 2017, YouTube permanently stopped functioning as an app on Defendant's Affected Smart TVs.  Defendant has offered no remedy to Plaintiffs or the millions of similarly situated consumers that have since lost access to YouTube on Defendant's Affected Smart TVs.  Defendant's advice to consumer complainants related to loss of YouTube functionality is to either (a) buy a new Smart TV, or (b) buy a separate, exterior streaming device such as a Google Chromecast, which would then allow consumers to access YouTube content on their Affected Smart TVs.  In other words, Defendant is using the loss of YouTube functionality on its Affected Smart TVs to continue to profit off of consumers who, like Plaintiffs, have suffered harm.

6.     YouTube explained the sudden loss of access to its app on Affected Smart TVs in the following notice:

> The YouTube Flash app on older TV device models will no longer be available starting June 26th 2017. If your TV model is from 2012 or earlier, you likely have this older version of the YouTube app which looks like this.
>
> In 2012, YouTube and our device partners started distributing an HTML5 version of the YouTube app for TVs. This app has many new features and other improvements that are not available on the older Flash app. We now think it is the right time to end-of-life this app because as we continue to roll out new features to the current YouTube on TV app (topic tabs, improved search, watch next, recommendations, better transport controls, etc.) the legacy devices using the Flash app cannot get them.
>
> **1.     How to continue watching YouTube**
>
> If your device is impacted by this launch, you can still continue watching YouTube using the following methods:

**a.** **Continue using your existing TV**

You can attach a streaming stick / box to your TV's HDMI input to continue watching YouTube on TV using your existing TV screen. Low cost options for this include: Chromecast and Android TV.

**b.** **Upgrade to a newer Smart TV or Game Console**

Most Smart TVs from 2013 and onward have the latest version of the YouTube app for TV.

YouTube is also available to be installed on PlayStation 3 & 4, Xbox 360 and Xbox One, and Wii U.

7. New Smart TVs can easily exceed $1,000 in price, while exterior streaming devices range in price from $50 to upwards of $100 per unit.

8. Defendant was aware, during the time it advertised and marketed its Affected Smart TVs to Plaintiffs and the Class, that YouTube could be discontinued or interrupted on its Smart TVs any time and there was nothing it could do to prevent such an event. This is evidenced by the terms of service it would have agreed to in developing its app with YouTube where YouTube expressly notified Defendant of its right to discontinue service at any time, which Defendant failed to share with Plaintiffs or the Class.

9. Since June 26, 2017, hundreds of Affected Smart TV owners have complained in Defendant's online community forums about the loss of YouTube functionality on their Affected Smart TVs. Defendant uses "moderators" in its online community forums to respond to consumers' complaints. The "solutions" offered by "moderators" in online forums mirror the "solutions" offered by Defendant and set forth by YouTube in the above notice to consumers. The following is an example of the frustrations voiced by owners of Defendant-manufactured Affected Smart TVs who have lost access to YouTube on their Affected Smart TVs:

- Usere2dQR2bdKk: Please help, it has only been a week and YouTube was not working on my Samsung Smart tv model UN46ES7500 and I deleted the app. After which I am unable to find it in Samsung AppStore or videos to download it!!! My son is 2 yrs old and I need the app to show him nursery rhymes…please help.
  - SAMSUNG MODERATOR: YouTube is transitioning from their legacy, Flash based service to a newer, more modern service. YouTube will still be

available on newer TVs that support HTML5. This is a decision by
YouTube to remove all the legacy Flash based apps. This is not just a
Samsung thing but it is all streaming devices from all manufacturers.  Sadly
Samsung cannot bring it back, you would need to bring this up with
YouTube.

- o SAMSUNG MODERATOR:  Features and specifications are subject to change without prior notification.

**PARTIES**

10. Plaintiff Baird is an individual resident of Los Angeles County, California.

11. Plaintiff Altes is an individual resident of Los Angeles County, California.

12. Plaintiff Leciejewski is an individual resident of Cook County, Illinois.

13. Plaintiff Chakraborty is an individual resident of Middlesex County, Massachusetts.

14. Defendant is a corporation that is qualified to conduct business in the State of California.  Defendant sells Smart TVs throughout California and advertises and markets them directly to consumers in California and has since 2010.  Defendant is the world leader in market share of LCD televisions.

15. Plaintiffs do not know the true names and capacities of Does 1-100 and therefore uses fictitious names.  Plaintiffs will amend the complaint pursuant to the Federal Rules of Civil Procedure to allege the names and capacities when ascertained.

16. Plaintiffs are informed and believe that Defendant, its subcontractors, agents, directly or else through other persons acting on its behalf, conspired to, agreed to, contributed to, assisted with, and/or otherwise caused all of the wrongful acts, defects, and omissions which are the subject matter of this complaint.

**JURISDICTION AND VENUE**

17. At all relevant times Plaintiff Baird was a citizen and resident of Los Angeles County, California.

18. At all relevant times Plaintiff Altes was a citizen and resident of Los Angeles

5

County, California.

19.     At all relevant times Plaintiff Leciejewski was a citizen and resident of Cook County, Illinois.

20.     At all relevant times Plaintiff Chakraborty was a citizen and resident of Middlesex County, Massachusetts.

21.     Defendant is a for-profit corporation organized under the laws of New York with its principal place of business in New Jersey.

22.     This Court has jurisdiction of the subject matter of this class action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy is greater than $5,000,000, exclusive of interest and costs exclusive of interest and costs, and because there is complete diversity of citizenship among the parties.

23.     This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in California, Defendant is authorized to do business in California, and Defendant otherwise intentionally availed itself of the markets in California, each of which are sufficient bases to render the exercise of jurisdiction by this Court permissible under notions of fair play and substantial justice.

24.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts or omissions giving rise to these claims occurred in the Central District of California.

## STATEMENT OF FACTS

25.     Plaintiff Baird purchased a new, 2012 model Samsung Smart TV, an Affected Smart TV, in the state of California, for family or household purposes.

26.     Plaintiff Altes purchased a new, 2012 model Samsung Smart TV, an Affected Smart TV, in the state of California, for family or household purposes.

27.     Plaintiff Leciejewski purchased a new, 2011 model Samsung Smart TV, an Affected Smart TV, in the state of Illinois, for family or household purposes.

28.     Plaintiff Chakraborty purchased a new, 2012 model Samsung Smart TV, an Affected Smart TV, in the state of Massachusetts, for family or household purposes.

29.     Defendant manufactured the television purchased by Plaintiffs and used advertising and marketing to educate the consuming public, including Plaintiffs, about Smart TV technology. That technology included but was not limited to smart televisions' new and unique ability to access video streaming apps, including YouTube, directly on its Smart TVs.  Defendant differentiated between its Smart TV line and non-Smart TV line with the main difference being that its Smart TVs came with a bundle of fundamental apps, including YouTube, as part of the purchase.  As such, Defendant sold consumers a mechanism for viewing television as well as for accessing an entire new universe of content through its apps, which added significant value to its Smart TVs.  For their access to additional content, consumers paid a premium when purchasing Affected Smart TVs.  Furthermore, in contrast to other apps, the consumers were not required to pay an additional fee to access YouTube app content.  In other words, the YouTube app content was provided to consumers without the need for any additional expenditure – aside from purchasing an Affected Smart TV.

30.     Defendant's main differentiation of Smart TVs was that, in purchasing one, a consumer also purchased access to video streaming apps, including YouTube.  Defendant advertised and marketed its Affected Smart TVs, including the Affected Smart TV purchased by Plaintiffs, by promoting its Affected Smart TVs' access to apps directly on its Affected Smart TVs, including but not limited to the YouTube app.  The following is a small sample of advertising and marketing of Affected Smart TVs which includes statements to the consuming public regarding Affected Smart TVs' access to video streaming apps, including YouTube:

   a.  Defendant's Affected Smart TV packaging, including the Affected Smart TV purchased by Plaintiffs, promoted Smart Hub app functionality almost exclusively and did so above and beyond any other functionality the Affected Smart TV may provide.  (*See* Exhibit B).  The front label of the Affected Smart TV box prominently displays the "Smart Hub" and focuses on YouTube as an available app, along with Netflix and other apps.  (*Id*.)  Defendant knew how to and indeed did make disclaimers about some apps, prominently noting of Netflix that "Netflix is available in certain countries" and that "Unlimited

7

membership is required" to access Netflix on Affected Smart TVs.  (*Id*.) Defendant even alerted consumers to other possibly important information to consider in making their purchasing decision by stating that "More information [is available] at www.netflix.com."  (*Id*.)  Defendant also disclaimed that "Applications or services may not be available in certain areas" but again made no reference to YouTube's express statement made to Defendant that the service could be terminated at any time.  (*Id*.)  Finally, Defendant described its "Smart Content" as "New Smart TV services that provide more entertaining experiences for you and your family" and warned that access to "Smart Content" "[r]equires internet access," that it "[m]ay not be available in all languages and areas" and that "additional internet data charges may apply." (*Id*.)  With all of these warnings and disclaimers, there was not one single mention on the packaging that YouTube access could or would cease at any time in the future and that Defendant did not control consumers' access to YouTube..

b.  A June 27, 2011 advertisement from Samsung stated "Samsung Smart TVs allow you to easily access apps from Samsung Apps, a growing collection of premium apps built specifically for your TV.  You can connect to your favorite digital content from Netflix, Blockbuster, Hulu Plus, YouTube, Next Level Sports from ESPN, Pandora, Facebook and Twitter – and find many other types of new interactive TV experiences.  Choose from our full line of Samsung Smart TVs."

(https://web.archive.org/web/20110627170223/http://www.samsung.com:80/us/topic/our-smart-tvs);

c.  A 2011 YouTube advertisement titled, "Introduction to Samsung Smart TV" focused on Smart TVs access to apps including video streaming apps and YouTube.  (https://www.youtube.com/watch?v=SnBN7uamy_8);

d.  A 2012 interview of Samsung's then Vice President of Content, Smart Product

Business Development and Marketing, Eric Anderson, where he explains
Samsung's focus of promoting video streaming apps including YouTube.  He
states, referring to why Affected Smart TVs are proliferating, that "it's all about
access and discovery of content" and that Smart TVs uniquely provide that.  He
states Samsung Smart TVs are uniquely appealable to consumers because they
offer an "open platform" which allows consumers access to video streaming
apps like YouTube and consumers should rely on that open access in
continuing to be loyal Samsung customers.  When asked what the top five (5)
content apps for Samsung Smart TVs are, he states "47% of most of the apps
downloaded are video in nature . . . ***YouTube has been number one or number
two or three for two years now and people want more choice over that type of
content***."  (https://www.youtube.com/watch?v=27wyji8t3gk);

e.  Plaintiffs' Affected Smart TV's packaging includes prominent advertising of
"YouTube" access with his Smart TV but no disclaimers about the potential
loss of YouTube accessibility in the future;

f.  On information and belief, from 2010 through 2014 Defendant used its
packaging to prominently advertise and market its Affected Smart TVs' access
to the "Smart Hub" platform which included access to the YouTube app without
disclaiming that access to YouTube could or would be interrupted at any date
before the end life of the product;

g.  On information and belief, Affected Smart TVs manufactured by Defendant
from 2010 through 2014 came in packaging that prominently displayed the
YouTube logo and informed consumers that the Smart TV they were
considering purchasing would provide access to YouTube for the life of the
product – in fact, some of Defendant's Smart TVs that are still on retailers'
shelves include this deceptive indication that YouTube will be available for the
life of the product;

h.  On information and belief, Defendant's in-store advertising and marketing

9

prominently promoted its Affected Smart TVs' access to YouTube and much of Defendant's current in-store advertising, marketing and in-store displays prominently use the YouTube logo to deceive consumers into thinking that YouTube access will be available for the life of the product which is a feature Defendant cannot guarantee.

31.     Plaintiffs relied on all the representations Defendant placed on its Affected Smart TV packaging, as well on research they completed online, in deciding to purchase his Affected Smart TV.  Plaintiffs would not have purchased the Affected Smart TV from Defendant had they known that YouTube could permanently cease operating.  Before purchasing their Affected Smart TVs, Defendant never gave Plaintiffs the opportunity to be aware of any disclaimers or warnings from Defendant related to cessation of YouTube functionality.  Because Defendant, the market leader, gave no indication related to cessation of YouTube functionality, Plaintiffs reasonably relied on Defendant's representations that by buying its Affected Smart TV they would also have unfettered access to YouTube.  Had they seen any disclaimer made by Defendant to the contrary, like other disclaimers on the box or like the disclaimer provided by YouTube to Samsung, they would not have purchased the Affected Smart TV.

32.     Defendant intended that consumers would rely on statements made on its Smart TV packaging and advertising.  This is evinced by, among other things, Defendant now includes disclaimers on some Smart TV packaging and advertising that informs consumers that app functionality is provided by third parties and can cease functioning at any time.  These disclaimers were absent, however, when Defendant was educating the consuming public about Smart TVs and marketing and advertising its Affected Smart TVs to Plaintiffs and consumers.

33.     From approximately 2010 to the present YouTube has been one of the most sought after and popular apps for streaming video content.  Unlike some other apps, YouTube does not require users to purchase a monthly subscription.  Instead, if a Smart TV can access YouTube, then users with such access can view millions of videos without the need to purchase anything aside from the Smart TV.  In other words, having access to the YouTube app on a Smart TV conveys a substantial benefit and real value to users that can access its streaming content without

the need for any additional monetary expenditures.  Defendant, seeking to capitalize on this new universe of free video streaming content, sought to draw in consumers to the costly but developing technology of Smart TVs based on the YouTube functionality.

34.     When making their decision to purchase the specific Affected Samsung Smart TV that they purchased, Plaintiffs reasonably relied on advertising and marketing from Defendant about what Defendant's Affected Smart TV could do; specifically, Plaintiffs purchased the specific Affected Smart TV that they purchased because it would allow them to access YouTube without the need for any additional monetary expenditure.

35.     Plaintiffs and the Class were exposed to and reasonably relied upon representations made by Defendant regarding its Affected Smart TVs' access to YouTube and that such access would be available for the life of the product.

36.     If Defendant had made Plaintiffs aware that the Affected Smart TV they ultimately purchased would not have access to YouTube or would in some date in the future lose access to YouTube, Plaintiffs would have made a different purchasing decision.  Plaintiffs would have either decided to purchase a non-smart television, to purchase another brand that would provide access to YouTube for the life of the product, or to pay less for a television due to the loss of YouTube accessibility.

37.     Plaintiffs understood that, based on Defendant's marketing of its smart televisions, Defendant's Affected Smart TVs came with access to YouTube included in the price offered for the life of the product.  At no point was it communicated to Plaintiffs or otherwise disclaimed that YouTube access could or would be discontinued.  Defendant made certain disclaimers regarding potential limitations on access to apps, including on the packaging of Affected Smart TVs, but failed to make any disclaimer regarding that, at the point of purchase, YouTube could permanently stop providing access to its app content and that Defendant knew at that point that it could not prevent the cessation of YouTube content to Affected Smart TVs.

38.     When YouTube access on Defendant's Affected Smart TVs ended on June 26, 2017, Plaintiffs and the Class were injured by a loss of YouTube functionality on Affected Smart TVs manufactured by Defendant between, at least, 2010 and 2013.

39.     On information and belief, Defendant and YouTube agreed to have YouTube pre-installed on all Affected Smart TVs sold by Defendant between 2010 and 2013.  Defendant and YouTube would have worked together to develop an app specifically for Defendant's "Smart Hub" app platform.  In doing so, Defendant would have agreed to YouTube's terms of service which included the express disclaimer that "YouTube reserves the right to discontinue any aspect of the Service at any time."  (Exhibit A § 4(J)).  The version of YouTube that was pre-loaded on the Affected Smart TVs during that time frame was eventually changed and upgraded to an HTML5-based app for a variety of reasons, including to have "up next" information for users and to assist YouTube with advertising.  After the upgrade, YouTube continued to provide content to older Affected Smart TVs for some time while shifting its main focus in streaming content to HTML5-based content.  Eventually, YouTube sought to discontinue providing its flash-based content to older Affected Smart TVs sometime in or about 2014 or 2015, but YouTube delayed cessation of content streaming to flash-based systems by another several years.

40.     On or about June 26, 2017, Plaintiffs' 2011 and 2012 model Samsung Smart TVs stopped providing access to the YouTube App.  On or about that same date, the YouTube app was similarly inaccessible from all Affected Smart TVs manufactured by Defendant, nationwide, from approximately 2010 to 2013.

## CLASS ACTION ALLEGATIONS

41.     This action is brought on behalf of the following classes:

     a.  Class 1:  All persons in the United States that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

     b.  Alaska Subclass:  All Alaska residents, including former Alaska residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

     c.  Arizona Subclass:  All Arizona residents, including former Arizona residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

d.   California Subclass:  All California residents, including former California residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

e.   Connecticut Subclass:  All Connecticut residents, including former Connecticut residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

f.   Delaware Subclass:  All Delaware residents, including former Delaware residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

g.   District of Columbia Subclass:  All District of Columbia residents, including former District of Columbia residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

h.   Florida Subclass:  All Florida residents, including former Florida residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

i.   Georgia Subclass:  All Georgia residents, including former Georgia residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

j.   Hawaii Subclass:  All Hawaii residents, including former Hawaii residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

k.   Illinois Subclass:  All Illinois residents, including former Illinois residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

l.  Maine Subclass:  All Maine residents, including former Maine residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

m.  Maryland Subclass:  All Maryland residents, including former Maine residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

n.  Massachusetts Subclass:  All Massachusetts residents, including former Massachusetts residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

o.  Michigan Subclass:  All Michigan residents, including former Michigan residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

p.  Minnesota Subclass:  All Minnesota residents, including former Minnesota residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

q.  Missouri Subclass:  All Missouri residents, including former Missouri residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

r.  New Hampshire Subclass:  All New Hampshire residents, including former New Hampshire Residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

s.  New Jersey Subclass:  All New Jersey residents, including former New Jersey residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming

14

video content.

t.  New York Subclass:  All New York residents, including former New York residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

u.  North Carolina Subclass:  All North Carolina residents, including former North Carolina residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

v.  North Dakota Subclass:  All North Dakota residents, including former North Dakota residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

w.  Ohio Subclass:  All Ohio residents, including former Ohio residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

x.  Rhode Island Subclass:  All Rhode Island residents, including former Rhode Island residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

y.  Texas Subclass:  All Texas residents, including former Texas residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

z.  Vermont Subclass:  All Vermont residents, including former Vermont residents, that purchased new, and still own, a Samsung Smart TV that beginning in June 2017, lost its ability to directly access YouTube streaming video content.

aa. Washington Subclass:  All Washington residents, including former Washington residents, that purchased new, and still own, a Samsung Smart TV that

15

1     beginning in June 2017, lost its ability to directly access YouTube streaming
2     video content.

3     bb. West Virginia Subclass:  All West Virginia residents, including former West
4     Virginia residents, that purchased new, and still own, a Samsung Smart TV that
5     beginning in June 2017, lost its ability to directly access YouTube streaming
6     video content.

7     42.     Excluded from the Classes are Defendant, its legal representatives, assigns, and
8  successors, and any entity in which the Defendant has a controlling interest.  Also, excluded from
9  the Classes is the judge to whom this case is assigned, the Judge's immediate family, and
10 Plaintiffs' counsel and their employees.  Plaintiffs reserve the right to amend the above-stated
11 class definitions based on facts learned in discovery.

12     43.     Plaintiffs allege on information and belief, and based on Defendant's 2012 Annual
13 Report, that the Class is so numerous that joinder of all members of the Class is impractical.
14 Defendant's 2012 Annual Report states, among other things, that "Samsung Electronics has
15 earned No. 1 global market share across all TV categories every year from 2006 through 2012,
16 including flat panel TVs and LCD TVs.  Despite the depressed TV market, we maintained our
17 dominant position by extending our sales lead over competitors in advanced North American and
18 European markets, as well as in emerging markets like Asia, Africa and Latin America.  That
19 striking performance was built on ultra large size premium Smart TV models, such as the ES9000
20 and ES8000, with innovative and differentiated quality and design."  Its 2012 Annual Report
21 claimed "37.22% - Top Global Smart TV Market Share in 2012."  In 2010, 2011, and 2012 there
22 were 114,900,000, 163,000,000, and 227,800,000 respectively, Smart TVs connected to the
23 internet.  https://www.statista.com/statistics/247160/forecast-of-the-number-of-connected-tv-sets-
24 worldwide/.  According to Defendant, the majority of Smart TVs were connected in the "advanced
25 North American and European markets."

26     44.     Common questions of law and fact exist as to all members of the Class and
27 predominate over any questions affecting only individual Class members.  These common legal
28 and factual questions include but are not limited to the following:

a. Whether Defendant breached an implied in law contract with the Class by failing to provide YouTube access on Affected Smart TVs sold to consumers;

b. Whether Defendant was unjustly enriched by selling Affected Smart TVs to the Class for sums of money that represented those Affected Smart TVs' full functionality, specifically access to YouTube only for those Affected Smart TVs to lose substantial value on June 26, 2017, at which point Defendant refused to refund the diminution of value to the Class;

c. Whether Defendant violated the covenant of good faith and fair dealing to the Class when it failed to deliver full functionality on its Affected Smart TVs, specifically access to YouTube, thereby denying Plaintiffs and the Class the benefit of their bargained for exchange;

d. Whether Defendant negligently, willfully, and/or knowingly caused the sale of Affected Smart TVs to consumers without providing access key applications such as YouTube;

e. Whether Defendant failed to adequately design its Affected Smart TVs to support any and all updates necessary to continue critical applications such as YouTube;

f. Whether Defendant failed to exercise reasonable care in engineering designing, and updating its Affected Smart TVs to ensure the applications it marketed to consumers could be supported;

g. Whether Defendant failed to warn consumers that YouTube may be discontinued at any time by YouTube, without support on Affected Smart TVs;

h. Whether Defendant's conduct violated the consumer protection laws of the twenty-seven (27) enumerated subclasses set forth above;

i. Whether a reasonable consumer would have relied on Defendant's advertising and marketing related to its Affected Smart TVs being able to access YouTube despite Defendant failing to disclose that YouTube could be turned off at any time;

j.   To what extent, without access to YouTube, the value of Defendant's Affected Smart TVs has been diminished.

45.   Plaintiffs' claims are typical of the Class' and within each subclass and are based on the same facts, legal theories and/or primary rights of all Class members, because when YouTube access on all of Defendant's Affected Smart TVs stopped on June 26, 2017, each Affected Smart TV owned by Plaintiffs and the Class lost value due to its substantial loss of functionality.  The class action procedure is also superior to individual lawsuits due to the massive volume of potential individual lawsuits and the similarities that persist in each Class member's claims when compared against the predicted amount of recovery per Class member.

46.   Plaintiffs will adequately and fairly protect the interests of the Class and each subclass.  They have retained counsel experienced in class action litigation.  Neither Plaintiffs nor their counsel have any interest that might cause them to not vigorously pursue this action in the Class' and subclass' best interests.

47.   Certification of the Class and each subclass is proper under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

48.   Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated by, at least, publication to allow class members to self-identify as members of the Class.

## FIRST CAUSE OF ACTION

**(Breach of Contract – *By Plaintiff on behalf of the Class, against Defendant and Does 1-100*)**

49.   Plaintiff and the Class repeat and reallege each and every allegation above as if set forth in full herein.

50.   Defendant offered its specific models of Affected Smart TVs to consumers for specific prices.  Those prices were based on the complete product and functionality the consumer would purchase including access to YouTube.  Defendant's offer promised, as evinced by Defendant's advertising, packaging, promoting, etc., that the Affected Smart TV being purchased included access to YouTube for the life of the product.

51.     Defendant intended Plaintiffs and the Class to be the beneficiaries of the promised performance of its Affected Smart TVs; namely, that Affected Smart TVs would provide access to YouTube without additional expense for the life of the product.

52.     Plaintiffs and the Class accepted Defendant's offer by purchasing Affected Smart TVs and paying Defendant's requested price.

53.     Defendant breached its contract with Plaintiffs and the Class on June 26, 2017, when its Affected Smart TVs stopped providing access to YouTube.

54.     Defendant further breached the implied covenant of good faith and fair dealing by failing to offer any no-cost solution to restore access to YouTube on Plaintiffs' and the Class's Affected Smart TVs.

55.     Plaintiffs and the Class incurred damages resulting from Defendant's breach including but not limited to a diminution of value of each and every Affected Smart TV due to the loss of YouTube functionality on those devices.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment/Quasi Contract – *By Plaintiff on behalf of the Class, against Defendant and Does 1-100*)

56.     Plaintiff and the Class repeat and reallege each and every allegation above as if set forth in full herein.

57.     Defendant received certain amounts of monies from Plaintiff and the Class for the specific models of Affected Smart TVs it sold to consumers.  Those prices were based on the complete product and functionality the consumer would purchase which included access to the YouTube app via the Affected Smart TV for the life of the product.

58.     Plaintiff and the Class paid certain amounts of monies to Defendant for specific Affected Smart TVs; Affected Smart TVs that were promised to provide YouTube access for the life of the product.

59.     Had Plaintiff and the Class understood that YouTube access would not be available for the life of the product they would have, at least, paid less money to Defendant for the Affected Smart TVs they purchased.

60.     Defendant's retention of monies received from Plaintiff and the Class unjustly enriches Defendant to this day to the detriment of Plaintiff and the Class.

### THIRD CAUSE OF ACTION

**(Negligent Misrepresentation –** *By Plaintiff on behalf of the Class, against Defendant and Does 1-100***)**

61.     Plaintiff and the Class repeat and reallege each and every allegation above as if set forth in full herein.

62.     Defendant made multiple, uniform material misrepresentations to Plaintiff and the Class; specifically, that one of the world's most popular video streaming apps, YouTube, would be available on Affected Smart TVs for the life of the products.  Defendant represented that by buying an Affected Smart TV consumers were also purchasing access to YouTube.  YouTube functionality for the life of the product was a material misrepresentation not only due to the popularity of YouTube as a video streaming app, but especially because, unlike other video streaming apps available on Affected Smart TVs, YouTube app functionality on Affected Smart TVs came without the additional subscription expenditure required to access similar video streaming apps such as Netflix and Hulu.

63.     However, Defendant's multiple, uniform, and material misrepresentations to Plaintiffs and the Class were not true because YouTube accessibility could cease at any time, including before consumers purchased Affected Smart TVs, and ultimately did.

64.     Although Defendant may have honestly believed that its multiple, uniform, and material misrepresentations to Plaintiffs and the Class were true, Defendant had no reasonable grounds for believing so.  Defendant was notified of YouTube's option to cease providing content to Affected Smart TVs in its terms of service with YouTube but failed to disclose those terms to consumers.  (*See* ¶¶ 3, 8 *supra*).  Furthermore, without owning YouTube or having a written agreement guaranteeing access to YouTube for the life of the product on Affected Smart TVs, Defendant had no reason to believe that YouTube access would be available on Affected Smart TVs for the life of those products.

65.     Defendant intended that Plaintiffs and the Class would rely on its multiple,

uniform, and material misrepresentations regarding YouTube access being available for the life of the product.  Defendant's intent is manifested by its front label on the Affected Smart TV box, which prominently displays the "Smart Hub" and focuses on YouTube as an available app and by its advertisements stating that consumers could access YouTube.  (*See* ¶ 30, *supra*).

66.     Plaintiffs and the Class reasonably relied on Defendant's multiple, uniform, and material misrepresentations that YouTube access would be available for the life of Affected Smart TVs and purchased Affected Smart TVs because of Defendant's prominent placement of the YouTube app on the Affected Smart TV box and advertising and as a result, purchased Affected Smart TVs.  (*Id.*).

67.     Plaintiffs and the Class were and currently remain damaged as a result of Defendant's multiple, uniform, and material misrepresentations by having their Affected Smart TVs lose functionality and value by no longer having access to the YouTube app.

68.     Plaintiffs and the Class' reasonable reliance on Defendant's multiple, uniform, and material misrepresentations were a substantial factor in causing their damages.

## FOURTH CAUSE OF ACTION

**(Fraud by Nondisclosure – *By Plaintiffs on behalf of the Class, against Defendant and Does 1-100*)**

69.     Plaintiffs and the Class repeat and reallege each and every allegation above as if set forth in full herein.

70.     Defendant failed to disclaim or otherwise warn that YouTube functionality could or would cease to be provided on Affected Smart TVs at any time before the end of life of Affected Smart TVs.

71.     Defendant knew that YouTube could be turned off on all Affected Smart TVs at any time, including before a consumer purchased an Affected Smart TV.  Defendant was notified of YouTube's option to cease providing content to Affected Smart TVs in its terms of service with YouTube but failed to disclose that term to consumers.  (*See* ¶¶ 3, 8 *supra*).

72.     Plaintiffs and the Class did not know about YouTube's and Defendant's terms of service.  (*Id.*)

73.     Defendant intended that Plaintiffs and the Class would rely on its multiple, uniform, and material representations regarding YouTube access being available for the life of the product.  Defendant's intent is manifested by, among other things, its package labeling on the Affected Smart TVs which prominently displays the "Smart Hub" and focuses on YouTube as an available app and by its advertisements stating that consumers could access YouTube.  (*See* ¶ 30, *supra*).

74.     Plaintiffs and the Class reasonably relied on Defendant's multiple, uniform, and material misrepresentations that YouTube access would be available for the life of affected Smart TVs because of Defendant's prominent placement of the YouTube app on the Affected Smart TV box and advertising and as a result, purchased Affected Smart TVs.  (*Id.*).

75.     Plaintiff and the Class were justified in relying on Defendant's representations regarding YouTube accessibility on Affected Smart TVs because, during the time in question, Smart TV technology was relatively new and reasonable consumers had no reason to expect that accessibility could or would cease on their Affected Smart TVs.  Furthermore, Plaintiff and the Class had no reason to believe there was an express term of service agreed to by Defendant but not passed along to consumers allowing YouTube to cease providing content at any time.  Defendant knew how to make disclaimers about app functionality on its packaging yet failed to make any such disclaimer with respect to YouTube.

76.     Plaintiffs and the Class were and currently remain damaged as a result of Defendant's multiple, uniform, and material misrepresentations by having their Affected Smart TVs lose functionality and value by no longer having access to the YouTube app.

77.     Plaintiffs' reasonable reliance on Defendant's multiple, uniform, and material misrepresentations were a substantial factor in causing their damages.

## FIFTH CAUSE OF ACTION

(**Breach of Implied Warranties**) – ***By Plaintiffs on behalf of the Class, against Defendant and Does 1-100***)

78.     Plaintiffs and the Class reassert and re-allege the allegations set forth in the above paragraphs as if the same were alleged herein this count.

79.     When Defendant sells its Affected Smart TVs into the market they come with an implied warranty of merchantability.

80.     This warranty at its minimum requires Defendant to accurately label its product, fulfill the promises made to Plaintiffs and the Class, and provide a good fit for the purpose that it was paid consideration for in the sale of its Affected Smart TVs.

81.     In the context of Defendant's Affected Smart TVs that included providing access and support for the YouTube application for the life of the product, or accurate labeling to ensure the consumer understood that its promotion of the application did not guarantee the consumer would have access to this feature for the life of the product.  At very least, it required Defendant to inform consumers that it would have expressly agreed with YouTube that YouTube could stop providing content to Affected Smart TVs at any time, including before an Affected Smart TV is purchased.

82.     By reason of the foregoing, Plaintiffs and the Class are entitled to recover for all general and special damages sustained as a direct and proximate result of Defendant's breach of its warranties of merchantability.

## SIXTH CAUSE OF ACTION

**(Violation of Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. Ann. §§ 45.50.471, *et seq.* – *By Plaintiffs on behalf of Alaska Subclass, against Defendant and Does 1-100*)**

83.     Plaintiffs and the Alaska Subclass repeat and reallege each and every allegation above as if set forth in full herein.

84.     Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs and the Alaska Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of Alaska Stat. Ann. § 45.50.471(b)(4).

85.     Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

86.     Defendant's unfair and deceptive representations occurred in trade or commerce.

87.     Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Alaska Subclass.

## SEVENTH CAUSE OF ACTION

**(Violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.* – By Plaintiffs on behalf of Arizona Subclass, against Defendant and Does 1-100)**

88.     Plaintiffs and the Arizona Subclass repeat and reallege each and every allegation above as if set forth in full herein.

89.     Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs and the Arizona Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

90.     Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

91.     Defendant's unfair and deceptive representations occurred in trade or commerce.

92.     Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Arizona Subclass.

## EIGHTH CAUSE OF ACTION

**(Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* – By Plaintiff Altes on behalf of California Subclass, against Defendant and Does 1-100)**

93.     Plaintiff Altes and the California Subclass repeat and reallege each and every allegation above as if set forth in full herein.

94.     Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiff Altes and the California Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

95.     Defendant intended that consumers would rely on the characteristics, uses and

1   benefits it represented regarding its Affected Smart TVs.

2        96.   Defendant's unfair and deceptive representations occurred in trade or commerce.

3        97.   Defendant's representation was unfair and deceptive resulting in an ascertainable

4   economic injury to Plaintiff Altes and the California Subclass.

5                        **NINTH CAUSE OF ACTION**

6   **(Violation of California Business and Professions Code, Cal. Bus. & Prof. Code
    §§ 17200, *et seq. – By Plaintiffs on behalf of California Subclass, against Defendant and
7   Does 1-100*)**

8        98.   Plaintiffs and the California Subclass repeat and reallege each and every allegation

9   above as if set forth in full herein.

10       99.   Defendant represented through advertising, marketing, packaging and by educating

11  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

12  TVs would have access to YouTube for the life of the product.  That material representation to

13  Plaintiffs and the California Subclass represented characteristics, uses and benefits that

14  Defendant's Affected Smart TVs did not possess which was unfair.

15       100.  Defendant intended that consumers would rely on the characteristics, uses and

16  benefits it represented regarding its Affected Smart TVs.

17       101.  Defendant's unfair and deceptive representations occurred in trade or commerce.

18       102.  Defendant's representation was unfair and deceptive resulting in an ascertainable

19  economic injury to Plaintiffs and the California Subclass requiring restitution.

20                       **TENTH CAUSE OF ACTION**

21  **(Violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-
    110a, *et seq. – By Plaintiffs on behalf of Connecticut Subclass, against Defendant and
22  Does 1-100*)**

23       103.  Plaintiffs and the Connecticut Subclass repeat and reallege each and every

24  allegation above as if set forth in full herein.

25       104.  Defendant represented through advertising, marketing, packaging and by educating

26  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

27  TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs

28  and the Connecticut Subclass represented characteristics, uses and benefits that Defendant's

1   Affected Smart TVs did not possess in violation of law.

2       105.   Defendant intended that consumers would rely on the characteristics, uses and

3   benefits it represented regarding its Affected Smart TVs.

4       106.   Defendant's unfair and deceptive representations occurred in trade or commerce.

5       107.   Defendant's representation was unfair and deceptive resulting in an ascertainable

6   economic injury to Plaintiffs and the Connecticut Subclass.

7                    **ELEVENTH CAUSE OF ACTION**

8   **(Violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511, *et seq.* –
    *By Plaintiffs on behalf of Delaware Subclass, against Defendant and Does 1-100*)**

9

10      108.   Plaintiffs and the Delaware Subclass repeat and reallege each and every allegation

    above as if set forth in full herein.
11

12      109.   Defendant represented through advertising, marketing, packaging and by educating

13  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

    TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs
14

15  and the Delaware Subclass represented characteristics, uses and benefits that Defendant's Affected

    Smart TVs did not possess in violation of law.
16

17      110.   Defendant intended that consumers would rely on the characteristics, uses and

18  benefits it represented regarding its Affected Smart TVs.

19      111.   Defendant's unfair and deceptive representations occurred in trade or commerce.

20      112.   Defendant's representation was unfair and deceptive resulting in an ascertainable

    economic injury to Plaintiffs and the Delaware Subclass.
21

22                    **TWELFTH CAUSE OF ACTION**

23  **(Violation of District of Columbia's Consumer Protection Procedures Act, D.C. Code
    Ann. §§ 28-3901, *et seq.* – By Plaintiffs on behalf of District of Columbia Subclass,
    *against Defendant and Does 1-100*)**
24

25      113.   Plaintiffs and the District of Columbia Subclass repeat and reallege each and every

    allegation above as if set forth in full herein.
26

27      114.   Defendant represented through advertising, marketing, packaging and by educating

28  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

1   TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs

2   and the District of Columbia Subclass represented characteristics, uses and benefits that

3   Defendant's Affected Smart TVs did not possess in violation of law.

4        115.   Defendant intended that consumers would rely on the characteristics, uses and

5   benefits it represented regarding its Affected Smart TVs.

6        116.   Defendant's unfair and deceptive representations occurred in trade or commerce.

7        117.   Defendant's representation was unfair and deceptive resulting in an ascertainable

8   economic injury to Plaintiffs and the District of Columbia Subclass.

9   **THIRTEENTH CAUSE OF ACTION**

10  **(Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann.
    §§ 501.201, *et seq. – By Plaintiffs on behalf of Florida Subclass, against Defendant*

11  *and Does 1-100*)**

12       118.   Plaintiffs and the Florida Subclass repeat and reallege each and every allegation

13  above as if set forth in full herein.

14       119.   Defendant represented through advertising, marketing, packaging and by educating

15  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

16  TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs

17  and the Florida Subclass represented characteristics, uses and benefits that Defendant's Affected

18  Smart TVs did not possess in violation of law.

19       120.   Defendant intended that consumers would rely on the characteristics, uses and

20  benefits it represented regarding its Affected Smart TVs.

21       121.   Defendant's unfair and deceptive representations occurred in trade or commerce.

22       122.   Defendant's representation was unfair and deceptive resulting in an ascertainable

23  economic injury to Plaintiffs and the Florida Subclass.

24  **FOURTEENTH CAUSE OF ACTION**

25  **(Violation of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-
    1-370, *et seq. – By Plaintiffs on behalf of Georgia Subclass, against Defendant*

26  *and Does 1-100*)**

27       123.   Plaintiffs and the Georgia Subclass repeat and reallege each and every allegation

28  above as if set forth in full herein.

124.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs and the Georgia Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

125.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

126.   Defendant's unfair and deceptive representations occurred in trade or commerce.

127.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Georgia Subclass.

## FIFTEENTH CAUSE OF ACTION

**(Violation of Hawaii's Unfair Practices Act, Haw. Rev. Stat. Ann. §§ 480-1, *et seq. – By Plaintiffs on behalf of Hawaii Subclass, against Defendant and Does 1-100*)**

128.   Plaintiffs and the Hawaii Subclass repeat and reallege each and every allegation above as if set forth in full herein.

129.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That representation to Plaintiffs and the Hawaii Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

130.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

131.   Defendant's unfair and deceptive representations occurred in trade or commerce. Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Hawaii Subclass.

## SIXTEENTH CAUSE OF ACTION

**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq. – By Plaintiffs on behalf of Illinois Subclass, against Defendant and Does 1-100*)**

132.   Plaintiffs and the Illinois Subclass repeat and reallege each and every allegation above as if set forth in full herein.

133.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiffs and the Illinois Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

134.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

135.   Defendant's unfair and deceptive representations occurred in trade or commerce.

136.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Illinois Subclass.

## SEVENTEENTH CAUSE OF ACTION

**(Violation of Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205-A, *et seq. – By Plaintiffs on behalf of Maine Subclass, against Defendant and Does 1-100*)**

137.    Plaintiffs and the Maine Subclass repeat and reallege each and every allegation above as if set forth in full herein.

138.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiffs and the Maine Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

139.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

140.   Defendant's unfair and deceptive representations occurred in trade or commerce.

1       141.    Defendant's representation was unfair and deceptive resulting in an ascertainable

2  economic injury to Plaintiffs and the Maine Subclass.

3                    **EIGHTEENTH CAUSE OF ACTION**

4       **(Violation of Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-**
        **101, *et seq. – By Plaintiffs on behalf of Maryland Subclass, against Defendant***
5                          ***and Does 1-100*)**

6       142.    Plaintiffs and the Maryland Subclass repeat and reallege each and every allegation

7  above as if set forth in full herein.

8       143.    Defendant represented through advertising, marketing, packaging and by educating

9  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

10 TVs would have access to YouTube for the life of the product.  That material representation to

11 Plaintiffs and the Maryland Subclass represented characteristics, uses and benefits that

12 Defendant's Affected Smart TVs did not possess in violation of law.

13      144.    Defendant intended that consumers would rely on the characteristics, uses and

14 benefits it represented regarding its Affected Smart TVs.

15      145.    Defendant's unfair and deceptive representations occurred in trade or commerce.

16      146.    Defendant's representation was unfair and deceptive resulting in an ascertainable

17 economic injury to Plaintiffs and the Maryland Subclass.

18                    **NINETEENTH CAUSE OF ACTION**

19      **(Violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1,**
        ***et seq. – By Plaintiffs on behalf of Massachusetts Subclass, against Defendant***
20                          ***and Does 1-100*)**

21      147.    Plaintiffs and the Massachusetts Subclass repeat and reallege each and every

22 allegation above as if set forth in full herein.

23      148.    Defendant represented through advertising, marketing, packaging and by educating

24 the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

25 TVs would have access to YouTube for the life of the product.  That material representation to

26 Plaintiffs and the Massachusetts Subclass represented characteristics, uses and benefits that

27 Defendant's Affected Smart TVs did not possess in violation of law.

28      149.    Defendant intended that consumers would rely on the characteristics, uses and

30

1    benefits it represented regarding its Affected Smart TVs.

2         150.   Defendant's unfair and deceptive representations occurred in trade or commerce.

3         151.   Defendant's representation was unfair and deceptive resulting in an ascertainable

4    economic injury to Plaintiffs and the Massachusetts Subclass.

5    **TWENTIETH CAUSE OF ACTION**

6    **(Violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. §§**
**445.901, *et seq.* – *By Plaintiffs on behalf of Michigan Subclass, against Defendant***
***and Does 1-100*)**

7

8         152.   Plaintiffs and the Michigan Subclass repeat and reallege each and every allegation

9    above as if set forth in full herein.

10        153.   Defendant represented through advertising, marketing, packaging and by educating

11   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

12   TVs would have access to YouTube for the life of the product.  That material representation to

13   Plaintiffs and the Michigan Subclass represented characteristics, uses and benefits that

14   Defendant's Affected Smart TVs did not possess in violation of law.

15        154.   Defendant intended that consumers would rely on the characteristics, uses and

16   benefits it represented regarding its Affected Smart TVs.

17        155.   Defendant's unfair and deceptive representations occurred in trade or commerce.

18        156.   Defendant's representation was unfair and deceptive resulting in an ascertainable

19   economic injury to Plaintiffs and the Michigan Subclass.

20   **TWENTY-FIRST CAUSE OF ACTION**

21   **(Violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.67,**
***et seq.* – *By Plaintiffs on behalf of Minnesota Subclass, against Defendant***
***and Does 1-100*)**

22

23        157.   Plaintiffs and the Minnesota Subclass repeat and reallege each and every allegation

24   above as if set forth in full herein.

25        158.   Defendant represented through advertising, marketing, packaging and by educating

26   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

27   TVs would have access to YouTube for the life of the product.  That material representation to

28   Plaintiffs and the Minnesota Subclass represented characteristics, uses and benefits that

1   Defendant's Affected Smart TVs did not possess in violation of law.

2      159.   Defendant intended that consumers would rely on the characteristics, uses and

3   benefits it represented regarding its Affected Smart TVs.

4      160.   Defendant's unfair and deceptive representations occurred in trade or commerce.

5      161.   Defendant's representation was unfair and deceptive resulting in an ascertainable

6   economic injury to Plaintiffs and the Minnesota Subclass.

7                    **TWENTY-SECOND CAUSE OF ACTION**

8      **(Violation of Missouri's Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010, *et***
       ***seq. – By Plaintiffs on behalf of Missouri Subclass, against Defendant and Does 1-100*)**

9

10     162.   Plaintiffs and the Missouri Subclass repeat and reallege each and every allegation

    above as if set forth in full herein.
11

12     163.   Defendant represented through advertising, marketing, packaging and by educating

13  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

14  TVs would have access to YouTube for the life of the product.  That material representation to

    Plaintiffs and the Missouri Subclass represented characteristics, uses and benefits that Defendant's
15

16  Affected Smart TVs did not possess in violation of law.

17     164.   Defendant intended that consumers would rely on the characteristics, uses and

18  benefits it represented regarding its Affected Smart TVs.

19     165.   Defendant's unfair and deceptive representations occurred in trade or commerce.

20     166.   Defendant's representation was unfair and deceptive resulting in an ascertainable

    economic injury to Plaintiffs and the Missouri Subclass.
21

22                   **TWENTY-THIRD CAUSE OF ACTION**

23     **(Violation of New Hampshire's N.H. Consumer Protection Act, N.H. Rev. Stat. Ann. §§**
       ***358-A:1, et seq. – By Plaintiffs on behalf of New Hampshire Subclass, against Defendant***
       ***and Does 1-100*)**
24

25     134.   Plaintiffs and the New Hampshire Subclass repeat and reallege each and every

    allegation above as if set forth in full herein.
26

27     135.   Defendant represented through advertising, marketing, packaging and by educating

28  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

1   TVs would have access to YouTube for the life of the product. That material representation to

2   Plaintiffs and the New Hampshire Subclass represented characteristics, uses and benefits that

3   Defendant's Affected Smart TVs did not possess in violation of law.

4       136.   Defendant intended that consumers would rely on the characteristics, uses and

5   benefits it represented regarding its Affected Smart TVs.

6       137.   Defendant's unfair and deceptive representations occurred in trade or commerce.

7       138.   Defendant's representation was unfair and deceptive resulting in an ascertainable

8   economic injury to Plaintiffs and the New Hampshire Subclass.

9                       **TWENTY-FOURTH CAUSE OF ACTION**

10      **(Violation of New Jersey's Unfair Trade Practices Act, N.J. Stat. Ann. §§ 56:8-19, *et seq.* – By Plaintiffs on behalf of New Jersey Subclass, against Defendant and Does 1-100)**

11

12      139.   Plaintiffs and the New Jersey Subclass repeat and reallege each and every

13  allegation above as if set forth in full herein.

14      140.   Defendant represented through advertising, marketing, packaging and by educating

15  the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

16  TVs would have access to YouTube for the life of the product. That material representation to

17  Plaintiffs and the New Jersey Subclass represented characteristics, uses and benefits that

18  Defendant's Affected Smart TVs did not possess in violation of law.

19      141.   Defendant intended that consumers would rely on the characteristics, uses and

20  benefits it represented regarding its Affected Smart TVs.

21      142.   Defendant's unfair and deceptive representations occurred in trade or commerce.

22      143.   Defendant's representation was unfair and deceptive resulting in an ascertainable

23  economic injury to Plaintiffs and the New Jersey Subclass.

24                      **TWENTY-FIFTH CAUSE OF ACTION**

25      **(Violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.* and §§ 350, *et seq.* – By Plaintiffs on behalf of New York Subclass, against Defendant and Does 1-100)**

26

27      144.   Plaintiffs and the New York Subclass repeat and reallege each and every allegation

28  above as if set forth in full herein.

145.    Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiffs and the New York Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

146.    Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

147.    Defendant's unfair and deceptive representations occurred in trade or commerce.

148.    Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the New York Subclass.

## TWENTY-SIXTH CAUSE OF ACTION

**(Violation of North Carolina's Monopolies, Trusts and Consumer Protection Act, N.C. Gen. Stat. §§ 75-1, *et seq*. – *By Plaintiffs on behalf of North Carolina Subclass, against Defendant and Does 1-100*)**

149.    Plaintiffs and the North Carolina Subclass repeat and reallege each and every allegation above as if set forth in full herein.

150.    Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiffs and the North Carolina Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

151.    Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

152.    Defendant's unfair and deceptive representations occurred in trade or commerce.  Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the North Carolina Subclass.

**TWENTY-SEVENTH CAUSE OF ACTION**

**(Violation of North Dakota's Consumer Fraud statute, N.D. Cent. Code §§ 51-15-01, *et seq. – By Plaintiffs on behalf of North Dakota Subclass, against Defendant and Does 1-100*)**

153.   Plaintiffs and the North Dakota Subclass repeat and reallege each and every allegation above as if set forth in full herein.

154.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiffs and the North Dakota Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

155.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

156.   Defendant's unfair and deceptive representations occurred in trade or commerce.

157.   Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the North Dakota Subclass.

**TWENTY-EIGHTH CAUSE OF ACTION**

**(Violation of Ohio's Consumer Sales Protection Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq. – By Plaintiffs on behalf of Ohio Subclass, against Defendant and Does 1-100*)**

158.   Plaintiffs and the Ohio Subclass repeat and reallege each and every allegation above as if set forth in full herein.

159.   Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product.  That material representation to Plaintiffs and the Ohio Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

160.   Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

161.   Defendant's unfair and deceptive representations occurred in trade or commerce.

1  162. Defendant's representation was unfair and deceptive resulting in an ascertainable

2 economic injury to Plaintiffs and the Ohio Subclass.

3       **TWENTY-NINTH CAUSE OF ACTION**

4 **(Violation of Rhode Island's Unfair Trade Practices & Consumer Protection Act, Ri.**
 **Gen. Laws §§ 6-13.1-1,** *et seq.* **– By Plaintiffs on behalf of Rhode Island Subclass, against**
5         ***Defendant and Does 1-100)***

6  163. Plaintiffs and the Rhode Island Subclass repeat and reallege each and every

7 allegation above as if set forth in full herein.

8  164. Defendant represented through advertising, marketing, packaging and by educating

9 the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

10 TVs would have access to YouTube for the life of the product.  That material representation to

11 Plaintiffs and the Rhode Island Subclass represented characteristics, uses and benefits that

12 Defendant's Affected Smart TVs did not possess in violation of law.

13  165. Defendant intended that consumers would rely on the characteristics, uses and

14 benefits it represented regarding its Affected Smart TVs.

15  166. Defendant's unfair and deceptive representations occurred in trade or commerce.

16  167. Defendant's representation was unfair and deceptive resulting in an ascertainable

17 economic injury to Plaintiffs and the Rhode Island Subclass.

18        **THIRTIETH CAUSE OF ACTION**

19 **(Violation of Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41,** *et*
 *seq.* **– By Plaintiffs on behalf of Texas Subclass, against Defendant and Does 1-100)**

20
21  168. Plaintiffs and the Texas Subclass repeat and reallege each and every allegation

 above as if set forth in full herein.
22
23  169. Defendant represented through advertising, marketing, packaging and by educating

 the consuming public about the then-emerging Smart TV product segment, that its Affected Smart
24
 TVs would have access to YouTube for the life of the product.  That material representation to
25
 Plaintiffs and the Texas Subclass represented characteristics, uses and benefits that Defendant's
26
 Affected Smart TVs did not possess in violation of law.
27
  170. Defendant intended that consumers would rely on the characteristics, uses and
28

benefits it represented regarding its Affected Smart TVs.

171. Defendant's unfair and deceptive representations occurred in trade or commerce.

172. Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Texas Subclass.

## THIRTY-FIRST CAUSE OF ACTION

**(Violation of Vermont's Consumer Fraud Law, 9 Vt. Stat. Ann. Tit. 9, §§ 2451, *et seq*. – By Plaintiffs on behalf of Vermont Subclass, against Defendant and Does 1-100)**

173. Plaintiffs and the Vermont Subclass repeat and reallege each and every allegation above as if set forth in full herein.

174. Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product. That material representation to Plaintiffs and the Vermont Subclass represented characteristics, uses and benefits that Defendant's Affected Smart TVs did not possess in violation of law.

175. Defendant intended that consumers would rely on the characteristics, uses and benefits it represented regarding its Affected Smart TVs.

176. Defendant's unfair and deceptive representations occurred in trade or commerce.

177. Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Vermont Subclass.

## THIRTY-SECOND CAUSE OF ACTION

**(Violation of Washington's Unfair Business Practices – Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.010, *et seq*. – By Plaintiffs on behalf of Washington Subclass, against Defendant and Does 1-100)**

178. Plaintiffs and the Washington Subclass repeat and reallege each and every allegation above as if set forth in full herein.

179. Defendant represented through advertising, marketing, packaging and by educating the consuming public about the then-emerging Smart TV product segment, that its Affected Smart TVs would have access to YouTube for the life of the product. That material representation to Plaintiffs and the Washington Subclass represented characteristics, uses and benefits that

1    Defendant's Affected Smart TVs did not possess in violation of law.

2         180.    Defendant intended that consumers would rely on the characteristics, uses and

3    benefits it represented regarding its Affected Smart TVs.

4         181.    Defendant's unfair and deceptive representations occurred in trade or commerce.

5         182.    Defendant's representation was unfair and deceptive resulting in an ascertainable

6    economic injury to Plaintiffs and the Washington Subclass.

7    <u>**THIRTY-THIRD CAUSE OF ACTION**</u>

8    **(Violation of West Virginia's Consumer Credit and Protection Act, W.Va. Code Ann.**
     **§§ 46A-1-101, *et seq. – By Plaintiffs on behalf of West Virginia Subclass, against***
9    ***Defendant and Does 1-100*)**

10        183.    Plaintiffs and the West Virginia Subclass repeat and reallege each and every

11   allegation above as if set forth in full herein.

12        184.    Defendant represented through advertising, marketing, packaging and by educating

13   the consuming public about the then-emerging Smart TV product segment, that its Affected Smart

14   TVs would have access to YouTube for the life of the product.  That material representation to

15   Plaintiffs and the West Virginia Subclass represented characteristics, uses and benefits that

16   Defendant's Affected Smart TVs did not possess in violation of law.

17        185.    Defendant intended that consumers would rely on the characteristics, uses and

18   benefits it represented regarding its Affected Smart TVs.

19        186.    Defendant's unfair and deceptive representations occurred in trade or commerce.

20        187.    Defendant's representation was unfair and deceptive resulting in an ascertainable

21   economic injury to Plaintiffs and the West Virginia Subclass.

22   <u>**PRAYER FOR RELIEF**</u>

23        WHEREFORE, Plaintiffs and the Class pray for relief as follows:

24        1.    Certification of Plaintiffs' class action claims pursuant to Federal Rule of Civil

25   Procedure 23;

26        2.    Designation of Plaintiffs as adequate class representatives for Class Members;

27        3.    Designation of Plaintiffs' counsel as Class Counsel;

28        4.    An award of actual, statutory, and/or punitive damages for to the extent recoverable

38

by law;

5.      An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

6.      An award of attorneys' fees and costs according to proof pursuant to California Code of Civil Procedure section 1021.5;

7.      Equitable relief by way of specific performance sufficient to reinstate Affected Smart TVs' access to YouTube;

8.      Pre-judgment and post-judgment interest, as provided by law;

9.      Payment of a reasonable incentive award to Plaintiffs in recognition of the services he has and will render in furtherance of all Class members' interests including the risks he is taking litigating this case; and

10.     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action.

DATED:  January 29, 2018              **ONGARO PC**


By:  _s/David Ongaro_____
                                      David Ongaro
                                      Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

https://www.youtube.com/t/terms

5,483 captures
17 Dec 2005 - 29 Jan 2018

JUL **AUG** OCT
◀ **30** ▶
2011 **2012** 2013
About this capture

Browse | Movies | Upload

Sign In

About    Press & Blogs    Copyright    Creators & Partners    Advertising    Developers    Help

**Terms of Service**

Pay Content Terms of Service

Collecting Society Notices

Copyright Notices

Community Guidelines

## Terms of Service

Community Guidelines

### 1. Your Acceptance

A. By using or visiting the YouTube website or any YouTube products, software, data feeds, and services provided to you on, from, or through the YouTube website (collectively the "Service") you signify your agreement to (1) these terms and conditions (the "Terms of Service"), (2) Google's Privacy Policy, found at http://www.google.com/intl/en/policies/privacy/ and incorporated herein by reference, and (3) YouTube's Community Guidelines, found at www.youtube.com/t/community_guidelines and also incorporated herein by reference. If you do not agree to any of these terms, the Google Privacy Policy, or the Community Guidelines, please do not use the Service.

B. Although we may attempt to notify you when major changes are made to these Terms of Service, you should periodically review the most up-to-date version www.youtube.com/t/terms). YouTube may, in its sole discretion, modify or revise these Terms of Service and policies at any time, and you agree to be bound by such modifications or revisions. Nothing in these Terms of Service shall be deemed to confer any third-party rights or benefits.

### 2. Service

A. These Terms of Service apply to all users of the Service, including users who are also contributors of Content on the Service. "Content" includes the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials you may view on, access through, or contribute to the Service. The Service includes all aspects of YouTube, including but not limited to all products, software and services offered via the YouTube website, such as the YouTube channels, the YouTube "Embeddable Player," the YouTube "Uploader" and other applications.

B. The Service may contain links to third party websites that are not owned or controlled by YouTube. YouTube has no control over, and assumes no responsibility for, the content, privacy policies, or practices of any third party websites. In addition, YouTube will not and cannot censor or edit the content of any third-party site. By using the Service, you expressly relieve YouTube from any and all liability arising from your use of any third-party website.

C. Accordingly, we encourage you to be aware when you leave the Service and to read the terms and conditions and privacy policy of each other website that you visit.

### 3. YouTube Accounts

A. In order to access some features of the Service, you will have to create a YouTube or Google account. You may never use another's account without permission. When creating your account, you must provide accurate and complete information. You are solely responsible for the activity that occurs on your account, and you must keep your account password secure. You must notify YouTube immediately of any breach of security or unauthorized use of your account.

B. Although YouTube will not be liable for your losses caused by any unauthorized use of your account, you may be liable for the losses of YouTube or others due to such unauthorized use.

### 4. General Use of the Service—Permissions and Restrictions

YouTube hereby grants you permission to access and use the Service as set forth in these Terms of Service, provided that:

A. You agree not to distribute in any medium any part of the Service or the Content without YouTube's prior written authorization, unless YouTube makes available the means for such distribution through functionality offered by the Service (such as the Embeddable Player).

B. You agree not to alter or modify any part of the Service.

C. You agree not to access Content through any technology or means other than the video playback pages of the Service itself, the Embeddable Player, or other explicitly authorized means YouTube may designate.

D. You agree not to use the Service for any of the following commercial uses unless you obtain YouTube's prior written approval:

   ▪ the sale of access to the Service;

   ▪ the sale of advertising, sponsorships, or promotions placed on or within the Service or Content; or

   ▪ the sale of advertising, sponsorships, or promotions on any page of an ad-enabled blog or website containing Content delivered via the Service, unless other material not obtained from YouTube appears on the same page and is of sufficient value to be the basis for such sales.

E. Prohibited commercial uses do not include:

   ▪ uploading an original video to YouTube, or maintaining an original channel on YouTube, to promote your business or artistic enterprise;

   ▪ showing YouTube videos through the Embeddable Player on an ad-enabled blog or website, subject to the advertising restrictions set forth above in Section 4.D; or

   ▪ any use that YouTube expressly authorizes in writing.

   (For more information about what constitutes a prohibited commercial use, see our FAQ.)

F. If you use the Embeddable Player on your website, you may not modify, build upon, or block any portion or functionality of the Embeddable Player, including but not limited to links back to the YouTube website.

https://www.youtube.com/terms

If you use the YouTube Uploader, you agree that it may automatically download and install updates from time to time from YouTube. These updates are designed to improve, enhance and further develop the Uploader and may take the form of bug fixes, enhanced functions, new software modules and completely new versions. You agree to receive such updates (and permit YouTube to deliver these to you) as part of your use of the Uploader.

8. you agree not to use or launch any automated system, including without limitation, "robots," "spiders," or "offline readers," that accesses the Service in a manner that sends more request messages to the YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional web browser. Notwithstanding the foregoing, YouTube grants the operators of public search engines permission to use spiders to copy materials from the site for the sole purpose of and solely to the extent necessary for creating publicly available searchable indices of the materials, but not caches or archives of such materials. YouTube reserves the right to revoke these exceptions either generally or in specific cases. You agree not to collect or harvest any personally identifiable information, including account names, from the Service, nor to use the communication systems provided by the Service (e.g., comments, email) for any commercial solicitation purposes. You agree not to solicit, for commercial purposes, any users of the Service with respect to their Content.

I. In your use of the Service, you will comply with all applicable laws.

J. YouTube reserves the right to discontinue any aspect of the Service at any time.

## 5. Your Use of Content

In addition to the general restrictions above, the following restrictions and conditions apply specifically to your use of Content.

A. The Content on the Service, and the trademarks, service marks and logos ("Marks") on the Service, are owned by or licensed to YouTube, subject to copyright and other intellectual property rights under the law.

B. Content is provided to you AS IS. You may access Content for your information and personal use solely as intended through the provided functionality of the Service and as permitted under these Terms of Service. You shall not download any Content unless you see a "download" or similar link displayed by YouTube on the Service for that Content. You shall not copy, reproduce, distribute, transmit, broadcast, display, sell, license, or otherwise exploit any Content for any other purposes without the prior written consent of YouTube or the respective licensors of the Content. YouTube and its licensors reserve all rights not expressly granted in and to the Service and the Content.

C. You agree not to circumvent, disable or otherwise interfere with security-related features of the Service or features that prevent or restrict use or copying of any Content or enforce limitations on use of the Service or the Content therein.

D. You understand that when using the Service, you will be exposed to Content from a variety of sources, and that YouTube is not responsible for the accuracy, usefulness, safety, or intellectual property rights of or relating to such Content. You further understand and acknowledge that you may be exposed to Content that is inaccurate, offensive, indecent, or objectionable, and you agree to waive, and hereby do waive, any legal or equitable rights or remedies you have or may have against YouTube with respect thereto, and, to the extent permitted by applicable law, agree to indemnify and hold harmless YouTube, its owners, operators, affiliates, licensors, and licensees to the fullest extent allowed by law regarding all matters related to your use of the Service.

## 6. Your Content and Conduct

A. As a YouTube account holder you may submit Content to the Service, including videos and user comments. You understand that YouTube does not guarantee any confidentiality with respect to any Content you submit.

B. You shall be solely responsible for your own Content and the consequences of submitting and publishing your Content on the Service. You affirm, represent, and warrant that you own or have the necessary licenses, rights, consents, and permissions to publish Content you submit; and you license to YouTube all patent, trademark, trade secret, copyright or other proprietary rights in and to such Content for publication on the Service pursuant to these Terms of Service.

C. For clarity, you retain all of your ownership rights in your Content. However, by submitting Content to YouTube, you hereby grant YouTube a worldwide, non-exclusive, royalty-free, sublicenseable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service and YouTube's (and its successors' and affiliates') business, including without limitation for promoting and redistributing part or all of the Service (and derivative works thereof) in any media formats and through any media channels. You also hereby grant each user of the Service a non-exclusive license to access your Content through the Service, and to use, reproduce, distribute, display and perform such Content as permitted through the functionality of the Service and under these Terms of Service. The above licenses granted by you in video Content you submit to the Service terminate within a commercially reasonable time after you remove or delete your videos from the Service. You understand and agree, however, that YouTube may retain, but not display, distribute, or perform, server copies of your videos that have been removed or deleted. The above licenses granted by you in user comments you submit are perpetual and irrevocable.

D. You further agree that Content you submit to the Service will not contain third party copyrighted material, or material that is subject to other third party proprietary rights, unless you have permission from the rightful owner of the material or you are otherwise legally entitled to post the material and to grant YouTube all of the license rights granted herein.

E. You further agree that you will not submit to the Service any Content or other material that is contrary to the YouTube Community Guidelines, currently found at www.youtube.com/t/community_guidelines, which may be updated from time to time, or contrary to applicable local, national, and international laws and regulations.

F. YouTube does not endorse any Content submitted to the Service by any user or other licensor, or any opinion, recommendation, or advice expressed therein, and YouTube expressly disclaims any and all liability in connection with Content. YouTube does not permit copyright infringing activities and infringement of intellectual property rights on the Service, and YouTube will remove all Content if properly notified that such Content infringes on another's intellectual property rights. YouTube reserves the right to remove Content without prior notice.

## 7. Account Termination Policy

A. YouTube will terminate a user's access to the Service if, under appropriate circumstances, the user is determined to be a repeat infringer.

B. YouTube reserves the right to decide whether Content violates these Terms of Service for reasons other than copyright infringement, such as, but not limited to, pornography, obscenity, or excessive length. YouTube may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service.

## 8. Digital Millennium Copyright Act

A. If you are a copyright owner or an agent thereof and believe that any Content infringes upon your copyrights, you may submit a notification pursuant to the Digital Millennium Copyright Act ("DMCA") by providing our Copyright Agent with the following information in writing (see 17 U.S.C 512(c)(3) for further detail):

- A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed;

- Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

- Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled and information reasonably sufficient to permit the service provider to locate the material;

- Information reasonably sufficient to permit the service provider to contact you, such as an address, telephone number, and, if available, an electronic mail;

- A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and

https://www.youtube.com/terms                                    JUL AUG OCT                ⊗
                                                                  ◀  30  ▶
5,483 captures                                                   2011  2012  2013
17 Dec 2009 - ...

technical support, and other communications should be directed to YouTube customer service through //support.google.com/youtube/?hl=en-US. You acknowledge that if you fail to comply with all of the requirements of this Section 5(D), your DMCA notice may not be valid.

B.  Counter-Notice. If you believe that your Content was removed (or to which access was disabled) is not infringing, or that you have the authorization from the copyright owner, the copyright owner's agent, or pursuant to the law, to post and use the material in your Content, you may send a counter-notice containing the following information to the Copyright Agent:

- ▪ Your physical or electronic signature;

- ▪ Identification of the Content that has been removed or to which access has been disabled and the location at which the Content appeared before it was removed or disabled;

- ▪ A statement that you have a good faith belief that the Content was removed or disabled as a result of mistake or a misidentification of the Content; and

- ▪ Your name, address, telephone number, and e-mail address, a statement that you consent to the jurisdiction of the federal court in San Francisco, California, and a statement that you will accept service of process from the person who provided notification of the alleged infringement.

If a counter-notice is received by the Copyright Agent, YouTube may send a copy of the counter-notice to the original complaining party informing that person that it may replace the removed Content or cease disabling it in 10 business days. Unless the copyright owner files an action seeking a court order against the Content provider, member or user, the removed Content may be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, at YouTube's sole discretion.

## 9. Warranty Disclaimer

YOU AGREE THAT YOUR USE OF THE SERVICES SHALL BE AT YOUR SOLE RISK. TO THE FULLEST EXTENT PERMITTED BY LAW, YOUTUBE, ITS OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, IN CONNECTION WITH THE SERVICES AND YOUR USE THEREOF. YOUTUBE MAKES NO WARRANTIES OR REPRESENTATIONS ABOUT THE ACCURACY OR COMPLETENESS OF THIS SITE'S CONTENT OR THE CONTENT OF ANY SITES LINKED TO THIS SITE AND ASSUMES NO LIABILITY OR RESPONSIBILITY FOR ANY (I) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT, (II) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, RESULTING FROM YOUR ACCESS TO AND USE OF OUR SERVICES, (III) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION AND/OR FINANCIAL INFORMATION STORED THEREIN, (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM OUR SERVICES, (IV) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE WHICH MAY BE TRANSMITTED TO OR THROUGH OUR SERVICES BY ANY THIRD PARTY, AND/OR (V) ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF THE USE OF ANY CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICES. YOUTUBE DOES NOT WARRANT, ENDORSE, GUARANTEE, OR ASSUME RESPONSIBILITY FOR ANY PRODUCT OR SERVICE ADVERTISED OR OFFERED BY A THIRD PARTY THROUGH THE SERVICES OR ANY HYPERLINKED SERVICES OR FEATURED IN ANY BANNER OR OTHER ADVERTISING, AND YOUTUBE WILL NOT BE A PARTY TO OR IN ANY WAY BE RESPONSIBLE FOR MONITORING ANY TRANSACTION BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR SERVICES. AS WITH THE PURCHASE OF A PRODUCT OR SERVICE THROUGH ANY MEDIUM OR IN ANY ENVIRONMENT, YOU SHOULD USE YOUR BEST JUDGMENT AND EXERCISE CAUTION WHERE APPROPRIATE.

## 10. Limitation of Liability

IN NO EVENT SHALL YOUTUBE, ITS OFFICERS, DIRECTORS, EMPLOYEES, OR AGENTS, BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING FROM ANY (I) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT, (II) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, RESULTING FROM YOUR ACCESS TO AND USE OF OUR SERVICES, (III) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION AND/OR FINANCIAL INFORMATION STORED THEREIN, (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM OUR SERVICES, (IV) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE, WHICH MAY BE TRANSMITTED TO OR THROUGH OUR SERVICES BY ANY THIRD PARTY, AND/OR (V) ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF ANY CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICES, WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL THEORY, AND WHETHER OR NOT THE COMPANY IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATION OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY LAW IN THE APPLICABLE JURISDICTION.

YOU SPECIFICALLY ACKNOWLEDGE THAT YOUTUBE SHALL NOT BE LIABLE FOR CONTENT OR THE DEFAMATORY, OFFENSIVE, OR ILLEGAL CONDUCT OF ANY THIRD PARTY AND THAT THE RISK OF HARM OR DAMAGE FROM THE FOREGOING RESTS ENTIRELY WITH YOU.

The Service is controlled and offered by YouTube from its facilities in the United States of America. YouTube makes no representations that the Service is appropriate or available for use in other locations. Those who access or use the Service from other jurisdictions do so at their own volition and are responsible for compliance with local law.

## 11. Indemnity

To the extent permitted by applicable law, you agree to defend, indemnify and hold harmless YouTube, its parent corporation, officers, directors, employees and agents, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) your use of and access to the Service; (ii) your violation of any term of these Terms of Service; (iii) your violation of any third party right, including without limitation any copyright, property, or privacy right; or (iv) any claim that your Content caused damage to a third party. This defense and indemnification obligation will survive these Terms of Service and your use of the Service.

## 12. Ability to Accept Terms of Service

You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in these Terms of Service, and to abide by and comply with these Terms of Service. In any case, you affirm that you are over the age of 13, as the Service is not intended for children under 13. If you are under 13 years of age, then please do not use the Service. There are lots of other great web sites for you. Talk to your parents about what sites are appropriate for you.

## 13. Assignment

These Terms of Service, and any rights and licenses granted hereunder, may not be transferred or assigned by you, but may be assigned by YouTube without restriction.

## 14. General

You agree that: (i) the Service shall be deemed solely based in California; and (ii) the Service shall be deemed a passive website that does not give rise to personal jurisdiction over YouTube, either specific or general, in jurisdictions other than California. These Terms of Service shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles. Any claim or dispute between you and YouTube that arises in whole or

out of, from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California. These Terms of Service, together with the Privacy Notice at http://www.google.com/intl/en/policies/privacy/ and any other legal notices published by YouTube on the Service, shall constitute the entire agreement between you and YouTube concerning the Service. If any provision of these Terms of Service is deemed invalid by a court of competent jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions of these Terms of Service, which shall remain in full force and effect. No waiver of any term of this these Terms of Service shall be deemed a further or continuing waiver of such term or any other term, and YouTube's failure to assert any right or provision under these Terms of Service shall not constitute a waiver of such right or provision. YouTube reserves the right to amend these Terms of Service at any time and without notice, and it is your responsibility to review these Terms of Service for any changes. Your use of the Service following any amendment of these Terms of Service will signify your assent to and acceptance of its revised terms. YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED.

**Dated: June 9, 2010**

About     Press & Blogs     Copyright     Creators & Partners     Advertising     Developers

Terms     Privacy     Safety     Report a bug     Try something new!

Language:  English ▾     Location:  Worldwide ▾     Safety:  Off ▾

Help ▴

# EXHIBIT B





